UNITED STATES of America

v.

Ferris ALEXANDER, et al.

Crim. No. 4–89–85(1).

United States District Court, D. Minnesota, Fourth Division.

Jan. 24, 1990.

See also 735 F.Supp. 923.

**970**

Jerome Arnold, Paul W. Murphy, Mary E. Carlson, Minneapolis, Minn., for U.S.

Robert F. Smith, Universal City, Cal., and Deborah Ellis, St. Paul, Minn., for defendant Ferris Alexander.

Michael McGlennon, Minneapolis, Minn., for defendant Dolores Alexander.

Joseph Friedberg, Minneapolis, Minn., for defendant Jeffrey Alexander.

Dave G. Roston, Minneapolis, Minn., for defendant Wanda Magnuson.

Randall D.B. Tigue, Minnesota, Minn., pro se.

## ORDER

ROSENBAUM, District Judge.

This matter is before the Court pursuant to objections made to a Report and Recommendation and an accompanying Pretrial Order each issued on September 30, 1989, by the Honorable Janice M. Symchych, United States Magistrate. Magistrate Symchych's recommendations and order are appended hereto. Also before the Court are defendants' objections to a Report and Recommendation issued by the Honorable Patrick J. McNulty, United States Magistrate, dated November 29, 1989. This recommendation is also appended hereto.

In reviewing a report and recommendation, the Court must consider the arguments and evidence, *de novo.* 28 U.S.C. § 636(b)(1); Rule 72(b), Federal Rules of Civil Procedure (Fed.R.Civ.P.); Local Rule 16(C)(2). After review of the Reports and Recommendations, the Court adopts each magistrate's reasoning and holdings, except Magistrate Symchych's recommendations 1, 2, 4, and 5.

In parts 1, 2, 4, and 5, Magistrate Symchych recommended that the Court find the RICO pretrial Restraining Order and consequent post-conviction forfeiture provisions, each pursuant to 18 U.S.C. § 1963 (§ 1963), unconstitutional, both facially and as applied. The magistrate found these provisions to be unconstitutionally overbroad and unconstitutional prior restraints. The magistrate, however, recommended against dismissing Counts VI, VII, and VIII.

The magistrate examined the language and scope of § 1963 and particularly examined this Court's Restraining Order, dated May 30, 1989. The order in question was issued upon the grand jury's return of the indictment herein. The relevant substance of the Restraining Order will be set forth below. In her review of the Restraining Order, the magistrate focused on its *ex parte* nature, its recordkeeping requirements, and its probable impact on the sale or distribution of protected materials. The magistrate then considered the same factors as they are implicated by RICO's forfeiture provisions. After her analysis, she also recommended that the Court find RICO's forfeiture provisions facially overbroad and a prior restraint.

The magistrate further urged the Court to strike these forfeiture provisions as applied. Noting the indictment identifies property which is to be forfeit in the event of conviction, she found the forfeiture sections of the indictment to be overly broad, encompassing "multiple bookstores, theatres, and videotape rental establishments," at least some of which, she determined, were presumptively protected by the first amendment. *Id.* at 13.

The government objects to these portions of the Report and Recommendation, arguing RICO is intended to provide powerful penalties, including forfeiture, to those engaged in racketeering activity. The United States then asserts that the nature of the RICO offense—be it narcotics, arson, extortion, or obscenity—is of no moment. The government further suggests RICO's forfeiture and restraining provisions are *in personam* and limited to interests in property acquired, maintained, or used in the

actual violation of the RICO statute. As such, the government claims RICO's forfeiture provisions are not overbroad, even in the obscenity context. The government concludes:

> it is not the fact that the property is a bookstore, that triggers the forfeiture provision, but rather it is the owner's use of the property to conduct his illegal activity (the nexus) that brings the property within the ambit of the penalty provisions.

Government's Memorandum, p. 9 (citations omitted).

On the question of prior restraint, the government focuses upon the distinction between unlawful prior censorship and legitimate post-trial punishment. The government cites the language of *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), in support of the difference it perceives:

> [if] the object of the statute is not punishment, in the ordinary sense, but suppression of the offending newspaper or periodical in the future

then the statute constitutes a prior restraint. *Id.* at 711, 51 S.Ct. at 629. The government urges rejection of the magistrate's recommendation to strike the Restraining Order.

For their part, defendants support the magistrate's Report and Recommendation. Indeed, they argue her recommendation is too narrow. They point to *Near*'s proscription of prior restraints and to subsequent cases rejecting attempts to punish obscenity by means of restraint "considerably less drastic than the outright forfeitures imposed by RICO."[1] Defendants also raise the spectre of differing community standards. They stress the possibility that an obscenity conviction in one community could lead to forfeitures in another community espousing completely different values.

*Analysis*

## I. The Restraining Order

The magistrate recommends lifting the Restraining Order on the grounds of unconstitutional overbreadth and prior restraint, finding the authorizing statute unconstitutional on its face and as applied. The Court addresses each of these issues separately.

### A. *Facial Challenge to 18 U.S.C. § 1963(d)*

#### 1. Overbreadth

A statute is overbroad if it unconstitutionally infringes upon free speech while regulating another activity. In other words, a statute is overbroad "if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). A law which arguably diminishes access to constitutionally protected materials is subject to first amendment overbreadth scrutiny. *See Upper Midwest Booksellers v. City of Minneapolis*, 780 F.2d 1389, 1391–92 (8th Cir. 1985).

The Court recognizes that invocation of the overbreadth doctrine is "strong medicine," which should be utilized "with hesitation, and then 'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982) (*quoting Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). In considering a facial challenge to a Congressional enactment, the Court is mindful that it must "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); *see Harman v. Forssenius*, 380 U.S. 528, 535, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965). The Court must determine if there exists a constitutional inter-

---

1. Defendants cite *City of Paducah v. Investment Entertainment*, 791 F.2d 463 (6th Cir.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 290 (1986); *Gayety Theaters, Inc. v. City of Miami*, 719 F.2d 1550 (11th Cir.1983); *Entertainment Concepts, Inc. III v. Maciejewski*, 631 F.2d 497, 506 (7th Cir.1980); *Cornflower Entertainment, Inc. v. Salt Lake City Corp.*, 485 F.Supp. 777 (D.Utah 1980); *Genusa v. City of Peoria*, 475 F.Supp. 1199, 1207–09 (C.D.Ill.1979), *modified*, 619 F.2d 1203, 1217–20 (7th Cir.1980).

pretation of the statute which is consistent with Congress' intent. *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 370–75, 91 S.Ct. 1400, 1405–07, 28 L.Ed.2d 822 (1971).

Clearly, some RICO pretrial restraining orders have no free speech implications whatsoever. Under 18 U.S.C. § 1963(d), restraints on property associated with RICO gambling, arson, extortion, or narcotics charges would not normally implicate the first amendment. Similarly, in the obscenity context, an order can be narrowly crafted to reach only those items which the grand jury has found probable cause to believe are obscene.[2]

■ The Court is confident that judges issuing pretrial restraining orders, pursuant to 18 U.S.C. § 1963(d), will seek to do so in a manner consistent with the Constitution. This assurance has been held sufficient to deny facial overbreadth challenges to statutes on first amendment grounds. *See Ferber,* 458 U.S. at 773, 102 S.Ct. at 3363. The Court, therefore, declines to adopt the magistrate's recommendation holding 18 U.S.C. § 1963(d) facially unconstitutional in RICO prosecutions founded on obscenity offenses. The Court concludes that such pretrial restraining orders must be reviewed on a case-by-case basis. *See American Library Assoc. v. Thornburgh,* 713 F.Supp. 469, 486 (D.D.C.1989). *See generally Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, ——, 109 S.Ct. 916, 927–28, 103 L.Ed.2d 34 (1989).

## 2. Prior Restraint

■ *Near* and its progeny counsel that any future restraint of speech, because of past or anticipated content, is a prior restraint. *Near,* 283 U.S. at 707–15, 51 S.Ct. at 628–30; *see Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 554–56, 95 S.Ct. 1239, 1244–45, 43 L.Ed.2d 448 (1975); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971); *Freedman v.*

*Maryland,* 380 U.S. 51, 57–60, 85 S.Ct. 734, 738–39, 13 L.Ed.2d 649 (1965); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70–72, 83 S.Ct. 631, 639–40, 9 L.Ed.2d 584 (1963). Clearly, "[a]ny system of prior restraints of expression ... bear[s] a heavy presumption against its constitutional validity." *Bantam Books, Inc.,* 372 U.S. at 70, 83 S.Ct. at 639.

Yet, not all prior restraints are impermissible. *Near,* 283 U.S. at 216, 51 S.Ct. at 631; *Southeastern Promotions, Ltd.,* 420 U.S. at 558, 95 S.Ct. at 1246. The cases make clear, however, that particular judicial safeguards and procedures must be followed before a prior restraint may be imposed. *Southeastern Promotions, Ltd.,* 420 U.S. at 559–60, 95 S.Ct. at 1247; *Freedman,* 380 U.S. at 58, 85 S.Ct. at 739.

An *ex parte* pretrial order or injunction presents particular prior restraint difficulties. Under such an order a defendant is required to "obey [the order] ... pending review of its merits and ... [is] subject to contempt proceedings" if he fails to do so. *Vance v. Universal Amusement Co., Inc.,* 445 U.S. 308, 319, 100 S.Ct. 1156, 1161, 63 L.Ed.2d 413 (1980). An *ex parte* pretrial order directed at a bookseller, at least some of whose wares have not been found obscene by a grand jury, raises grave constitutional questions. The Supreme Court could have been speaking of this threat when it said:

> Invariably, the Court has felt obliged to condemn systems in which the exercise of such authority was not bounded by precise and clear standards. The reasoning has been, simply, that the danger of censorship and of abridgement of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship—reflecting the natural distaste of a free people—is deep written in our law.

*Southeastern Promotions, Ltd.,* 420 U.S. at 553, 95 S.Ct. at 1244.

---

**2.** Whether these objects are ultimately forfeitable, pursuant to 18 U.S.C. § 1963(a)-(c), (e), is an entirely different question, dependent upon a jury's verdict that the property was obtained, used, or maintained in connection with the RICO violation beyond a reasonable doubt. *United States v. Pryba,* 674 F.Supp. 1518, 1521 (E.D.Va.1987).

This Court has recently rejected a facial challenge, albeit in a declaratory judgment action context, to the pretrial restraint provisions of 18 U.S.C. § 1963(d). *Alexander v. Thornburgh*, 713 F.Supp. 1278, 1292–93 (D.Minn.1989). Judge Doty reasoned that some pretrial restraining or seizure orders could certainly be unconstitutional in nature. *Id.* at 1292. He concluded, however, that "[t]he mere fact that § 1963 may be applied in a manner that results in an unconstitutional prior restraint does not render that section unconstitutional on its face." *Id.* at 1292.

This Court agrees that the mere possibility of a statutory restraint and a consequent penalty for trafficking in obscenity does not impermissibly chill the exercise of first amendment rights. Nor does the mere potential for statute-driven self-censorship comprise a constitutional infirmity. *Fort Wayne Books*, 489 U.S. at —, 109 S.Ct. at 926. Indeed, "[t]hose who conduct their affairs close to the boundaries of proscribed activity necessarily incur some risks." *Polykoff v. Collins*, 816 F.2d 1326, 1340 (9th Cir.1987). Proper, and properly chilling, penalties for obscenity, including fines, incarceration, and other criminal sanctions, have frequently been upheld. *See Fort Wayne Books*, 489 U.S. at — n. 4, 109 S.Ct. at 922 n. 4 (and cases cited therein); *Polykoff*, 816 F.2d at 1336–40; *511 Detroit St. v. Kelley*, 807 F.2d 1293, 1298 (6th Cir.1986), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987).

For these reasons, this Court finds that § 1963's pretrial restraining order authority, standing alone, is not facially unconstitutional as a prior restraint. *See generally Alexander*, 713 F.Supp. at 1290–1291.

### B. *The Restraining Order, as Applied*

The magistrate, after recommending invalidation of 18 U.S.C. § 1963(d) on its face, recommended that this Court strike the May 30, 1989, Restraining Order, as issued, on first amendment grounds.

In *Fort Wayne Books,* the Supreme Court emphasized procedural safeguards which must be followed prior to the seizure of obscene materials. *Fort Wayne Books,*

489 U.S. at —, 109 S.Ct. at 927 (*citing Marcus v. Search Warrant*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961)). A seizure is permitted only if a "procedure 'designed to focus searchingly on the question of obscenity'" is present. *Id.* at —, 109 S.Ct. at 927 (*quoting Quantity of Books v. Kansas*, 378 U.S. 205, 210, 84 S.Ct. 1723, 1725, 12 L.Ed.2d 809 (1964)). The Supreme Court held:

> [w]hile the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause (and without a warrant in various circumstances), it is otherwise when materials presumptively protected by the First Amendment are involved.

*Id.* at —, 109 S.Ct. at 927.

The magistrate correctly noted that the Restraining Order differs significantly from that imposed in *Fort Wayne Books*. Report and Recommendation, at 14. Notably, with the exception of those items seized pursuant to search warrant, there has been no actual seizure of expressive materials. The Restraining Order does not proscribe continued traffic in the specific items which have been charged as obscene in the indictment. The only items detained were those seized pursuant to warrant and held for evidence. Their duplicates, presumably, remain for sale or rental on defendants' shelves and racks. The magistrate found, however, that the present order could be characterized as generally freezing all of defendants' property and assets. *Id.* at 14–16.

All parties agree that under the terms of the Restraining Order, defendants have continued to conduct their businesses— businesses they contend are almost exclusively engaged in the dissemination of first amendment protected materials. Nothing has been presented to suggest that defendants have been significantly hampered in the orderly conduct of these enterprises. The Court, however, must examine each aspect of the imposed order to determine its validity in the face of the overbreadth and prior restraint challenges.

### 1. Inalienability of Property and Interests in Property

The Restraining Order prohibits the defendants from the sale or transfer of identified real estate, personal property, and various interests in property, absent approval of the Court. Restraining Order, ¶¶ 5, 6(b)–(d). For purposes of this analysis, the Court assumes that some of these property interests may have been secured, maintained, or derived from the sale of obscene materials.[3] With the exception of the Court's restraint on alienability, defendants maintain their day-to-day interests in the property and have regular control over its use.

#### a. *Overbreadth*

■ The Restraining Order, as imposed, clearly reaches beyond the scope of allegedly obscene materials. The order covers real estate, intangible interests in property, and personal property, including "video cassettes, magazines, [and] other printed materials." Taken as a whole, this property is inextricably bound to defendants' ability to exercise first amendment rights. The order, however, explicitly permits continuation of defendants' ordinary course of business.[4] Restraining Order, ¶ 5. The order, as fashioned, grants to defendants the use of the property in all respects save atypical transfers or sales.

In this same regard, the order does not absolutely proscribe the sale or transfer of real estate, personal property, or holdings. Such transactions may be consummated with Court approval, which approval has been granted in one instance. *See* Order, dated June 29, 1989. In light of actual experience, therefore, the Court finds that this aspect of the order does not impermissibly impinge upon defendants' personal exercise of free speech. Further, the order contains no provision forbidding the acquisition of new property which might, itself, be used in the exercise of free speech rights. Although the Restraining Order does extend beyond allegedly obscene materials, the Court finds that it does not burden those materials in a fashion which renders it constitutionally overbroad.

#### b. *Prior Restraint*

■ As set forth above, the Restraining Order imposes control over, rather than seizure of, property. Had the order called for the seizure of property, it may well have run afoul of the rule in *Fort Wayne Books*. *Fort Wayne Books*, 489 U.S. at ——, 109 S.Ct. at 928–29. Aside from those few items seized for evidence pursuant to warrant, the remaining books, films, and videotapes have remained on defendants' property and available for purchase. *Id.* at ——, 109 S.Ct. at 929. Although the Restraining Order necessarily arises out of defendants' past speech, the proscription upon sale or transfer of defendants' real estate or the personal property contained

---

**3.** This assumption is in no regard tantamount to a holding in this regard. For forfeiture purposes, the government must prove the nexus between the property and the materials beyond a reasonable doubt. *Pryba*, 674 F.Supp. at 1521.

**4.** Ordinary course of business is defined in the order as:

the following types of expenditures and transactions, made by the defendants directly or by and through A B Distributors, or Video Hits, Controlled Entities, if such expenditures and transactions are made in the ordinary course of business of the defendants:

(a) purchase of inventory, supplies and equipment in an arm's length transaction;

(b) payment of business liabilities including but not limited to accounts payable, mortgage and contract for deed payments, insurance premiums, license fees, utilities and taxes which existed at the time of the signing of this order and which arise hereafter;

(c) ordinary use of supplies and equipment;

(d) payment of reasonable business salaries not to exceed $1,000 per week gross for any of the defendants;

(e) payment, pursuant to an arm's length transaction, for the normal and average upkeep or maintenance of any real property, equipment or furnishings necessary for ordinary business operations;

(f) currency transactions including deposits and bank transfers of funds from the accounts of the Controlled Entities into the business account to be established in accordance with this Order as directed below;

(g) payment of reasonable attorney fees and expenses;

(h) payment of ordinary living expenses upon application by the defendants in accordance with paragraph 12 of this Order.

Post-indictment Restraining Order, ¶ 1.

therein does not impact upon defendants' future speech or communication. *See Near*, 283 U.S. at 706, 51 S.Ct. at 627.

Certain of the property touched by the order, including noncommercial and purely personal property, plays no part in defendants' exercise of first amendment rights. As such, these items do not implicate the first amendment.

### 2. Performance Bond

The order permits defendants to offer a performance bond in lieu of compliance with its terms. Restraining Order, ¶ 11. No such bond has been posted nor has any party challenged the provision. Therefore, the Court declines to offer any opinion as to the propriety of such a bond.

### 3. Bank Accounts

■ Paragraph 6(a) of the restraining order forbids the transfer, sale, or concealment of:

all money, stock certificates, property or other interest in any account, certificate or safe deposit box maintained at any main or branch office of the following financial institutions and other partnerships and other corporations, including but not limited to officers at the addresses listed herein.

This restriction is subject to the provision permitting routine transactions in the ordinary course of defendants' businesses. Restraining Order, ¶¶ 1 and 5.

#### a. *Overbreadth*

The Restraining Order reaches all funds in designated institutions and, therefore, potentially touches defendants' ability to acquire and sell protected materials. But the Court finds that the "ordinary course" provision saves the order from constitutional flaw. Books, magazines, videotapes, and films may continue to be purchased, stocked, and sold as in the past. Auxiliary property necessary for the dissemination of those goods may also be obtained. Further, there is a provision for major transactions out of the ordinary course, upon approval of the Court. As such, the order maintains the status quo. It is not impermissibly overbroad since defendants' constitutional right to free speech are unim-

peded. The Restraining Order preserves that state of affairs which allows defendants to vend protected materials.

#### b. *Prior Restraint*

The same "ordinary course" provision undercuts any prior restraint argument. Had the right to use funds been restrained, defendants' ability to carry on their protected speech activities would have been significantly impeded—a result clearly at odds with the first amendment. *See Fort Wayne Books*, 489 U.S. at ——, 109 S.Ct. at 928–29. But this has not occurred. Under these circumstances, the Court declines to strike § 1963, a provision which, on its face and in fact, permits defendants to carry on their regular business activity. The ordinary course provisions are not content based. Defendants are free to garner such inventory as they choose and dispose of it as they see fit consistent with their prior business practices.

### 4. Recordkeeping

■ Paragraph four of the post-indictment restraining order mandates that:

All transactions ... shall be recorded pursuant to generally accepted accounting principles and shall be evidenced by cash register slips, sales receipt journal, bank deposits, numerical invoices and order forms, disbursements, journal, checks, computer printouts, inventory lists, and any other ordinary business record. The defendants shall not use cashier's checks, money orders, or drafts to pay for any of the ordinary business transactions or personal expenses allowed herein or use said instruments for the purpose of transferring funds. All records and documents regarding the defendants' business transactions shall be maintained and provided to the government on a weekly basis.

Restraining Order, at ¶ 4.

The Court has approved, above, the portions of the order permitting defendants to proceed with activities in the ordinary course of business. Paragraph four simply records those transactions in an orderly fashion. This does not contravene the first amendment either for overbreadth or on the basis of prior restraint.

### a. Overbreadth

Statutes which are overbroad, in a first amendment context, limit access to, or availability of, protected materials. *Upper Midwest Booksellers*, 780 F.2d at 1391. Mandatory recordkeeping has been subjected to overbreadth scrutiny. In *American Library Association v. Thornburgh*, 713 F.Supp. 469 (D.D.C.1989), the district court struck imposed recordkeeping in the context of the Child Protection and Obscenity Enforcement Act, 18 U.S.C. § 2257. The district court held that broad recordkeeping, which required movie producers to record the names and ages of all actors and actresses in their movies, was overbroad and impinged upon the producer's ability to make otherwise protected motion pictures. *Id.* at 477–79. The district court examined whether the recordkeeping demands were "tailored precisely" to the evil of child pornography or whether they infringed, prohibited, or otherwise hindered the dissemination of free speech. *Id.* at 479.

The recordkeeping provision here does not suffer from the same infirmities. The recordkeeping requirements are neither as demanding nor as broad as those stricken in *American Library Association.* Regular financial records are kept in the ordinary course of almost any business. The order does not require defendants to undertake any extensive procedure to comply. In the absence of any significant problems, none of which have been brought to the Court's attention, there does not appear to be sufficient impact upon freedom of speech to warrant the relief provided in *American Library Association.*

The recordkeeping, moreover, is "tailored precisely" to the evil sanctioned by the RICO obscenity charges. *See id.* at 479. The requirement simply permits the tracing of property which the grand jury asserts to be potentially forfeitable. Other than requiring order and regularity in financial transactions, the burden is minimal and does not invalidate this portion of the order.

### b. Prior Restraint

The recordkeeping aspect of the Restraining Order is a prior restraint in only the most remote sense. The weekly reporting requirement—certainly not an ordinary business practice—potentially detracts from defendants' available time and funds which might otherwise be available for protected speech. Yet, the order merely calls for defendants to turn over records on a weekly basis. There is no evidence of any significant burden on defendants' businesses arising out of this procedure. Although defendants may experience some minor inconvenience complying with paragraph four, the Court declines to declare that inconvenience to be of constitutional dimension.

### 5. One Bank Account

■ Paragraph eight of the Restraining Order states:

All income from any source received directly or indirectly by the defendants Ferris Jacob Alexander, Dolores Alexander and Jeffrey Alexander, their agents or assigns, and by or through any of the Controlled Entities, corporations or partnerships in the ordinary course of business as defined above shall be placed in one checking account located at The Union Bank and Trust, 312 Central Avenue Southeast, Minneapolis, Minnesota and all expenses paid in the ordinary course of business as defined above including but not limited to employee salaries, inventory, supplies, utilities, rent, mortgage or contract for deed payments, insurance premiums, taxes and general overhead shall be paid out of said account.

### a. Overbreadth

For many of the same reasons just discussed, this requirement is not impermissibly overbroad. The requirement is something of a burden merely because it is unusual. In addition, certain of the controlled entities are located outside the Twin Cities metropolitan area.

The rationale underlying the provision and its actual effect mitigate against a finding of unconstitutional overbreadth. The requirement clearly provides a benefit in terms of simplicity: all of defendants' transactions, since the date of the Restrain-

ing Order, are conducted through one account. The only restriction on use of the funds is that such use be in the ordinary course of business. There is no proscription on the accession, maintenance, or sale of any item whatsoever. In the absence of any content-based restriction, this is not an impermissibly overbroad requirement.

### b. *Prior Restraint*

Since defendants' funds remain available for acquisition and dissemination of arguably protected materials, the Court finds the single bank account requirement is not a prior restraint. The fact that some of defendants' businesses are located at a distance from the Union Bank and Trust may incidentally complicate some transactions. *See American Library Association v. Thornburgh,* 713 F.Supp. at 477–79 (extensive investigative and traveling requirements may impermissibly infringement upon the exercise of protected speech). Common sense suggests, however, that many difficulties may be overcome through regular mail or telephonic correspondence. But in the absence of evidence of such difficulties, and none have been shown thus far, the operant fact remains defendants' unrestricted access to funds regularly used to purchase and sell their wares. Defendants have expressed no difficulties in conducting business operations out of one account, and the Court stands ready to consider any adjustments which may be appropriate. Upon the information before the Court, however, paragraph eight is constitutionally sound.

### 6. Monitoring

Paragraph nine of the restraining order provides:

> The Federal Government shall designate an individual with business and account-ing experience to monitor the operations of the Controlled Entities as well as of the defendants' financial affairs to ensure that the assets of said entities and persons are not dissipated or wasted in violation of this order. Said monitoring shall include but not be limited to a twice monthly review of the books and records of the Controlled Entities and the defendants. The designated individual shall be compensated by the defendants as an expense in the ordinary course of business.

Restraining Order, ¶ 9.

This provision has not been implemented. In the absence of any implementation, the Court expresses no thoughts on its legality.

Having examined each aspect of the Restraining Order, the Court concludes that the limitations placed on defendants' property pass constitutional muster. The Court, therefore, declines to adopt the magistrate's recommendation to lift the Restraining Order.

## II. Post-trial Forfeiture

The magistrate recommended that the Court declare 18 U.S.C. § 1963(a)–(c), (e), RICO's post-trial forfeiture provisions, unconstitutional both facially and as applied. She concluded the provisions were overbroad and a prior restraint. Again, the Court addresses each question individually.

### A. *Facial Challenge*

■ In *Fort Wayne Books*, the Supreme Court declined to assess the constitutionality of the Indiana RICO statute's post-trial forfeiture section in an obscenity context.[5] Similarly, Judge Doty did not reach the issue.[6] *Alexander v. Thornburgh,* 713 F.Supp. at 1294. At least one district

---

**5.** The Court specifically bypassed the question: for the purpose of disposing of this case, we assume without deciding that bookstores and their contents are forfeitable (like other property such as a bank account or yacht) when it is proved that these items are property actually used in, or derived from, a pattern of violations of the state's obscenity laws.
*Fort Wayne Books,* 489 U.S. at ——, 109 S.Ct. at 928 (footnote omitted).

**6.** The Court stated:

> This Court finds that the present action for declaratory and injunctive relief also does not present the opportunity to determine whether RICO's forfeiture provision is unconstitutional as a prior restraint when the property forfeited consists of a defendant's entire interest in an enterprise which sells materials presumptively protected by the first amendment.
> *Alexander v. Thornburgh,* 713 F.Supp. 1278, 1294 (D.Minn.1989).

court, however, has upheld the constitutionality of the forfeiture provision in the face of a prior restraint challenge. *United States v. Pryba*, 674 F.Supp. 1504, 1512 (E.D.Va.1987).

### 1. Overbreadth

Defendants claim RICO's forfeiture provisions are overbroad since property, some of it clearly protected literature or video tapes, may be subject to seizure. Defendants contend this impermissibly infringes upon constitutionally protected expression.[7]

The broad language of RICO's forfeiture provision and the consequent penalties do not impermissibly chill future expression. The Supreme Court, addressing this issue in *Fort Wayne Books'* pretrial restraining order, noted:

> It may be true that the stiff[ ] RICO penalties will provide an additional deterrent to those who might otherwise sell obscene materials; perhaps this means ... that some cautious booksellers will practice self-censorship and remove first amendment protected materials from their shelves. But deterrence of the sale of obscene materials is a legitimate end of ... obscenity laws and our cases have long recognized the practical reality that "any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene."

*Fort Wayne Books*, 489 U.S. at ——, 109 S.Ct. at 925 (*quoting Smith v. California*, 361 U.S. 147, 154–55, 80 S.Ct. 215, 219–20, 4 L.Ed.2d 205 (1959)). As noted previously, courts have recognized that individuals and entities conducting their businesses near the edge of proscribed activity necessarily undertake some risks. *Polykoff*, 816 F.2d at 1340. The Court, therefore, rejects the

defendants' suggestion that RICO's forfeiture language is impermissibly threatening.

Substantively, defendants claim that RICO's forfeiture provisions exact penalties of disproportionate size. Clearly, a forfeiture is a penalty, requiring one who has been convicted to disgorge that which has been accumulated. Under RICO, it is a special penalty in that the items to be surrendered must actually have been used in, or derived from, the RICO pattern of violations. 18 U.S.C. § 1963(a)–(c), (e). Such a penalty is analogous to statutory penalties which are indisputably permissible. Certainly, the imposition of a fine following a conviction has been approved, even when the fine is greater than any traceable amount of illegally garnered assets. *Polykoff*, 816 F.2d at 1339; *511 Detroit*, 807 F.2d at 1299; *see Alexander*, 713 F.Supp. at 1289.

More importantly, RICO guarantees an equivalence between the forfeiture of assets and the criminal acts Congress sought to proscribe when it passed RICO: that which is to be given up in forfeit is the product and profit of the RICO offense. In other words, property or assets garnered as a result of proscribed activity is that which is to be surrendered as a partial penalty. The fairness of this scheme is assured by the fact that a jury must call for its surrender upon proof beyond a reasonable doubt. *Pryba*, 674 F.Supp. at 1521.

Of course, even in the absence of any forfeiture, the same funds and assets could be lost to defendants pursuant to the general fine statute.[8] The issue is that each penalty, whether fine or forfeiture, may possibly deprive defendants of the means to continue disseminating protected materials—and the public could lose access to

---

**7.** As a threshold matter, the Court rejects defendants' suggestion that the § 1963 language is unacceptably vague as written. The Court finds the RICO forfeiture language sufficiently concise to pass constitutional muster. Absolute precision is not constitutionally mandated. *See Pryba*, 674 F.Supp. at 1511.

That there may be marginal cases in which it is difficult to determine the side of the line on

which a particular fact situation falls is no sufficient reason to hold ... language too ambiguous to define a criminal offense. *Roth v. United States*, 354 U.S. 476, 491–92, 77 S.Ct. 1304, 1313, 1 L.Ed.2d 1498 (1957).

**8.** 18 U.S.C. § 3571(b)(3) contemplates a fine of $250,000 per felony conviction. *See* 18 U.S.C. § 1963. There are 48 counts in this indictment.

items which are in no way illegal or obscene.[9]

Realistically, bookstores, theaters, and places of public discourse have faced regulation and possible seizure before. While the issue has never been squarely addressed, it does not appear that closure based upon a fire code violation or health hazard would present problems of overbreadth. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705–07, 106 S.Ct. 3172, 3176–77, 92 L.Ed.2d 568 (1986). Similarly, the indictment before the Court charges a tax violation which, if upheld after trial, could call for substantial payment of amounts owing. The taxes and penalties, as well as any fine amount, could touch on protected assets in the event of seizure or sale.

The Court is disinclined to strike a statutory penalty, which may otherwise be lawfully imposed, simply because defendants have been charged with violating the RICO obscenity provisions or because the res to be surrendered has a speech or first amendment flavor. It is clear that the Supreme Court has found obscenity to be without first amendment protection. *See Miller v. California*, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). Some publications or video materials may fall on one side or the other of the protected speech/proscribed obscenity line. But the law defines a point over which one travels at his hazard. The mere fact that there is a penalty for going beyond that point does not bar a dollar penalty, either by fine or forfeiture.

### 2. Prior Restraint

For many of the same reasons, the forfeiture provisions of 18 U.S.C. § 1963(a)–(c), (e) do not impermissibly restrain free speech. Unlike administrative actions, such as movie censorship, *Freedman*, 380 U.S. at 58, 85 S.Ct. at 738–39, and license revocation, *City of Paducah v. Investment Entertainment, Inc.*, 791 F.2d 463, 470 (6th Cir.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 290 (1986), which may not be undertaken without procedural safeguards, RICO's forfeiture is only possible after a full trial. At trial, the jury must find, beyond a reasonable doubt, that the property to be forfeited was connected to the illegal activity. *Pryba*, 674 F.Supp. at 1521.

In the same sense that a dollar fine presents no prior restraint problems, *Polykoff*, 816 F.2d at 1338, and *511 Detroit St., Inc.*, 807 F.2d at 1298, the forfeiture of assets does not impermissibly hamper defendants' ability to speak in the future.[10] As above, a fine can lawfully be imposed in an amount far beyond a defendant's assets. Under RICO, and the companion tax charge in this indictment, the defendants face substantial fines. The possibility of dollar loss, then, will be present even in the absence of forfeiture. Any penalty, by fine or forfeiture, is imposed only after trial and not before. "Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law [rather] than to throttle them and all others beforehand." *Southeastern Pro-*

---

**9.** The magistrate concluded the fine and forfeiture penalties were distinct on the basis that forfeiture could encompass vast holdings of a defendant unrelated to the criminal activity. The Court does not deem the distinction to be significant. A fine exceeding $1,000,000—certainly a possibility here—could, in all likelihood, touch upon a significant portion of defendants' assets, some of them non-expressive.

**10.** One cannot claim that the possibility of substantial fine or forfeiture is a deprivation of the right to speak freely:

this argument proves too much, since every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities. One liable for a civil damages award has less money to spend on paid politi-

cal announcements or to contribute to political causes, yet no one would suggest that such liability gives rise to a valid First Amendment claim. Cf. *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Similarly, a thief who is sent to prison might complain that his First Amendment right to speak in public places has been infringed because of the confinement, but we have explicitly rejected a prisoner's claim to a prison environment least restrictive of his desire to speak to outsiders. *See Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *see also Jones v. North Carolina Prisoners Union*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 699, 106 S.Ct. 3172, 3177, 92 L.Ed.2d 568 (1986).

*motions Ltd. v. Conrad*, 420 U.S. at 558–59, 95 S.Ct. at 1246–47 (emphasis original). This policy is completely consistent with *Near* and its progeny.[11]

Post conviction forfeiture necessarily deprives a defendant of assets garnered in the past. There is no necessary impact on expressive activity in the future. *American Library Association*, 713 F.Supp at 486.

> The fact that criminal punishment—whether it is by fine, incarceration, etc.—makes it physically difficult for the person to engage in First Amendment activity does not make the punishment unlawful "prior restraint," as long as the person legally is unrestrained to engage in speech.

*Id.* at 486 n. 21. Deterrence is a goal of RICO, and forfeiture plays a role in that objective. This chill, if it is that at all, is a "legitimate consequence of the RICO forfeiture provisions or any other criminal penalty." *Pryba*, 674 F.Supp. at 1512.

Defendants object to the RICO forfeiture penalties. In their view, obscenity simply cannot be made a crime without jeopardizing first amendment freedoms. Defendants confuse sincerity of belief with adherence to the rule of law. This way lies anarchy. The Supreme Court has held that obscenity may be criminalized consistent with our Constitution. *See, e.g., Ferber*, 458 U.S. at 764–65, 102 S.Ct. at 3358; *Smith v. United States*, 431 U.S. 291, 304–05, 97 S.Ct. 1756, 1765–66, 52 L.Ed.2d 324 (1977); *Miller*, 413 U.S. at 23–24, 93 S.Ct. at 2614–15. As such, this Court, and the law, treats an obscenity charge the same as any other criminal charge, be it bank robbery, narcotics trafficking, or firearm violations. Were a defendant to be convicted of operating a drug ring out of a bookstore, the first amendment would not prevent seizure of that store, if the requisite nexus was proven. This Court will follow the law, and declines the invitation to strike RICO forfeiture provisions in an obscenity case as a prior restraint.

**B. *As Applied Challenge***

■ The Court, therefore, concludes that, on its face, § 1963 forfeiture may be imposed, in an obscenity context, consistent with the Constitution. The actual forfeiture of property, however, has yet to take place. Defendants' first line of defense is the jury. Until the jury renders its verdict, the Court will refrain from rendering a decision on this forfeiture, as applied.

Accordingly, the Court adopts the Report and Recommendation dated September 30, 1989, in all respects except parts 1, 2, 4, and 5. As to those parts, defendants' motion to hold the forfeiture and restraining order provisions of 18 U.S.C. § 1963 unconstitutional is denied. Defendants' motion to strike the Restraining Order of May 30, 1989, and the forfeiture provisions of the indictment is also denied.

The Court adopts in full the Report and Recommendation issued by the Honorable Patrick J. McNulty, dated November 29, 1989.

Having considered the magistrates' Reports and Recommendations, the Court now turns to Magistrate Symchych's Pretrial Order issued September 30, 1989. Defendants individually or collectively object to parts 4, 6, 9, and 12 of the order. The government objects to parts 4, 12, and 15.

Unlike a report and recommendation, a magistrate's order may be disturbed by this Court only upon a showing that the order was clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Rule 72(a), Federal Rules of Civil Procedure; Local Rule 16(B)(2). Based upon a review of the record, with this standard in mind, the Court affirms the order dated September 30, 1989, except as to paragraph 12, and modifies paragraph 15 to clarify the government's responsibility.

■ In part 12 of her order, the magistrate granted defendants' motion for early disclosure of Jencks Act, 18 U.S.C. § 3500, materials, requiring such production "10 calendar days prior to trial." The Court

---

**11.** "Liberty of speech and of the press is ... not an absolute right, and the state may punish its abuse." *Near v. Minnesota*, 283 U.S. 697, 708, 51 S.Ct. 625, 628, 75 L.Ed. 1357 (1931).

finds the magistrate's order is contrary to law. 28 U.S.C. § 636(b)(1)(A); Rule 72(a), Federal Rules of Civil Procedure; Local Rule 16(B)(2).

Rule 16(a)(2), Federal Rules of Criminal Procedure, specifically excludes statements made by government witnesses from pretrial discovery, except as provided in the Jencks Act. The Jencks Act states in relevant part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500(a). This language has been interpreted according to its terms. Although the government may disclose Jencks Act material to a defendant in advance of trial, the government may not be required to do so. *United States v. White,* 750 F.2d 726, 728–29 (8th Cir.1984); *see United States v. Collins,* 652 F.2d 735, 738 (8th Cir.1981), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).

This Court may not compel pretrial disclosure over government objection. *White,* 750 F.2d at 728–29; *United States v. Algie,* 667 F.2d 569, 571 (6th Cir.1982) (and cases cited therein); *United States v. Jones,* 678 F.Supp. 1302, 1303 (S.D.Ohio 1988); *United States v. Greater Syracuse Board of Realtors,* 438 F.Supp. 376, 383 (N.D.N.Y.1977). Part 12 of the order is reversed and defendants will receive Jencks Act materials as provided by law.

In part 15 of the Pretrial Order, the magistrate granted defendants' motion for disclosure of government agreements with witnesses. The government shall disclose said agreements on January 26, 1990. In all other regards, the Pretrial Order of September 30, 1989, is affirmed.

IT IS SO ORDERED.

## APPENDIX A

### Magistrate Symchych's Recommendations

#### September 30, 1989

1. Defendants' motion to find the forfeiture provisions of 18 U.S.C. § 1963, when applied to a prosecution based on predicate offenses of obscenity, to be unconstitutional under the First Amendment be GRANTED;

2. Defendants' motion to find the pretrial restraining order provisions of 18 U.S.C. § 1963, when applied to a prosecution based on predicate offenses of obscenity, to be unconstitutional under the First Amendment be GRANTED;

3. Defendants' motion to dismiss Counts VI, VII, and VIII of the indictment on the foregoing grounds be DENIED;

4. The forfeiture provisions of the indictment be dismissed with prejudice;

5. The pretrial restraining order presently in effect be vacated, and any sum expended by defendants for its monitoring be restored to them within thirty days hereof, or upon any order of the trial court sustaining this recommendation;

6. Defendants' motions to otherwise find the RICO statute, when applied to a prosecution based upon predicate offenses of obscenity, unconstitutional under the First Amendment be DENIED;

7. Defendants' motions to find the RICO statute, as applied to a prosecution based upon predicate offenses of obscenity, to be unconstitutional in violation of the Ex Post Facto Clause be DENIED;

8. Defendants' motions to find the obscenity standard underlying the charged RICO predicate offenses and the offenses charged pursuant to 18 U.S.C. §§ 1465 and 1466, unconstitutional under the First Amendment be DENIED;

9. Defendants' motion to dismiss the indictment on grounds of equitable estoppel be DENIED;

10. Defendants' motion to dismiss the counts alleged under §§ 1465 and 1466 on grounds of temporal remoteness be DENIED;

11. Defendants' motion for leave to present an affirmative defense that he in good-faith mistakenly believed the materials in issue not to be obscene be DENIED;

12. Defendants' motion to dismiss Count I of the indictment on grounds of duplicity be DENIED;

13. Defendants' motion to dismiss Count I of the indictment on grounds of irreparable harm to the Sixth Amendment right to counsel and interference with the attorney-client privilege be DENIED;

14. Defendants' motion to dismiss Count I of the indictment on the grounds that it is properly chargeable only as a conspiracy to violate 26 U.S.C. § 7206(1) be DENIED;

15. Defendants' motion to dismiss the indictment on grounds of prosecutorial misconduct before the grand jury be DENIED;

16. Defendants' motion to suppress evidence obtained by search and seizure be, until such time as the matter is briefed and heard, TAKEN UNDER ADVISEMENT;

17. Defendants' motion to suppress statements, including the product of electronic surveillance, be DENIED; and

18. Defendants' motion to suppress trial testimony of witness Robert Milavetz be DENIED.

## APPENDIX B

### Magistrate Symchych's Order

### September 30, 1989

1. Defendants' briefs regarding the motion to suppress evidence obtained by search and seizure shall be submitted to United States Magistrate Patrick McNulty, and served on the United States, no later than October 20, 1989, with no further leave for extension;

2. The government's responsive brief regarding the motion to suppress evidence obtained by search and seizure shall be submitted and served no later than October 27, 1989;

3. Hearing on the motion to suppress evidence obtained by search and seizure, including all testimony and argument, is set for 10:00 a.m., November 14, 1989, before United States Magistrate Patrick McNulty in Room 530 United States Courthouse at 110 South Fourth Street in Minneapolis, Minnesota. All counsel and parties shall be present;

4. Defendant Tigue's motion for severance and separate trial from the remaining defendants is granted;

5. Trial of the remaining defendants shall proceed prior to trail of defendant Tigue, to ensure that the trial of defendant Ferris Alexander, Sr. has concluded prior to any proposed use by defendant Tigue of materials deriving from their attorney-client relationship;

6. Defendants' motion to sever the tax-related counts of the indictment from the RICO and obscenity-related counts is DENIED;

7. Defendants' motions for severance from one another for trial, with the exception of defendant Tigue, are DENIED;

8. Defendants' motion for *James* hearing regarding Count I of the indictment is DENIED;

9. Defendants' motion for disclosure of grand jury materials is DENIED;

10. Defendants' motion for disclosure of confidential informers is DENIED;

11. Defendants' motion for a list of government witnesses is DENIED;

12. Defendants' motion for pretrial disclosure of Jencks Act materials, to the extent that the government shall produce said materials 10 calendar days prior to trial, is GRANTED;

13. Defendants' motion to require government agents to retain rough notes is GRANTED;

14. Defendants' motions for discovery of Rule 16 and exculpatory materials, to the extent they cover information within the scope of FRCrP 16 and *Brady v. Maryland* and its progeny, are GRANTED;

15. Defendants' motion for disclosure of government agreements with witnesses are GRANTED;

16. Defendants' motion for notice of intent to utilize 404(b) evidence is DENIED;

17. Defendants' motion for a bill of particulars is DENIED;

18. Defendants' motions relating to jury selection, including the number of peremptory challenges, the degree of information to be disclosed regarding prosepctive [sic] jurors, and the method of voir dire, are RESERVED FOR THE TRIAL COURT.

## APPENDIX C

Magistrate McNulty's Recommendations

November 29, 1989

1. That the Court enter an Order denying all motions by defendants for orders suppressing evidence.

2. That the Court enter an Order directing the United States Attorney to immediately destroy all copies of the magazine title *Freier Leben* and all of the material seized in execution of Search Warrant No. 88–553 as disclosed on the receipt attached thereto.

## APPENDIX D

### REPORT & RECOMMENDATION AND ORDER

The indictment in this matter, set forth in 79 pages and 43 separate counts, alleges a longstanding criminal obscenity racketeering enterprise, in violation of the federal RICO statute, a 20–year criminal conspiracy to defraud the United States by impairing and impeding the Internal Revenue Service, numerous substantive federal obscenity violations, and substantive tax violations. As gleaned from the face of the indictment, the government contends that defendant Ferris Alexander, Sr., has, for

those 20 years, engaged in a livelihood of purveying pornographic materials, and in the course of doing so, has both concealed his identity and hidden the proceeds of that livelihood, all for criminal purposes. It alleges that the other defendants, in a variety of roles and times, have assisted him in that criminal conduct. The codefendants include his wife, son, bookkeeper, and attorney of some 15 years.

The defendants have filed a large number of pretrial motions, including serious constitutional challenges to the use of the RICO statute in conjunction with predicate offenses of obscenity, and other First Amendment impediments to the prosecution of this matter. Additionally, defendants challenge the conspiracy count of the indictment as pleaded, raise issues about the application of the attorney-client and spousal privileges in this case, challenge the propriety of the grand jury proceedings, and seek suppression of items seized pursuant to warrant. In addition, numerous discovery-related motions have been made; motions for severance of defendants and counts are also pending. Other motions are also pending, and are resolved below.

### PROCEDURAL HISTORY

Eighty-seven search warrants were authorized between May 9 and 11, 1988, by United States Magistrate Floyd Boline.[1] The United States grand jury sat on this matter from March, 1988, until May 30, 1989, when it returned its indictment. An *ex parte* post-indictment restraining order, pursuant to 18 U.S.C. § 1963(d)(1)(A), was entered that same date, and later amended on June 29, 1989. Defendants first appeared on May 31, 1989. Orders extending the pretrial and trial schedules were en-

---

**1.** Following execution of the search warrants, Ferris Alexander filed a civil complaint in this court, seeking injunctive relief against the prosecution he contemplated. He did so on many of the same First Amendment challenges he now makes in this criminal case. *Alexander v. Thornburgh,* Civil 4–88–526. United States District Judge David S. Doty granted summary judgment for the Attorney General. 713 F.Supp. 1278 (D.Minn.1989). In so doing, he rejected many of Alexander's challenges, but did not rule on the constitutionality of RICO's post-conviction forfeiture provisions under the prior restraint doctrine. In addition, the court treated the challenges as facial ones, and did not have before it, the RICO/obscenity questions as applied to Alexander in the context of an actual criminal proceeding. The appeal from the summary judgment order was dismissed as moot on August 28, 1989, by the United States Court of Appeals for the Eighth Circuit.

tered both on June 16, 1989 and August 9, 1989, after the case was designated as complex pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(8)(A). Pursuant to these scheduling orders, the parties were to file any and all pretrial motions by July 28, 1989, with hearing set for August 8, 1989. Motions were filed by all defendants in accordance with that deadline, and each appeared with counsel for hearing on August 8, 1989, except defendant Tigue, who appeared *pro se*. Defendant Ferris Alexander was then represented by Douglas Thomson, Esq. and Neal Shapiro, Esq. Defendant Dolores Alexander was represented by Jack Nordby, Esq., of the firm of Meshbesher, Singer & Spence. Defendant Wanda Magnuson was represented by David Roston, Esq., and defendant Jeffrey Alexander was represented by Joseph Friedberg, Esq. The United States was represented by Assistant United States Attorneys Paul Murphy and Mary Carlson.

At the conclusion of the hearing on that date, it was ordered that the government submit, *in camera*, the transcripts of all grand jury proceedings in the matter. That has been accomplished, and those transcripts are in possession of the court. In addition, it was then ordered that by August 9, 1989, each defendant lodge with the court his or her itemized objections to the Tigue affidavit, previously filed on July 28, 1989. That affidavit was orally ordered to then be placed under seal, for review only by the court, as it may bear on disposition of pretrial motions. Defendants submitted those objections. The affidavit remains under seal. In addition, each defendant was ordered, by August 9, to submit an itemization of which motions he or she was joining, including itemization of which search warrants were objected to by each. The latter has not been done. Last, defendants' briefs were ordered to be submitted by August 21, 1989, and the government's by August 28, 1989. The court orally outlined issues required to be briefed, so that the parties' specific legal arguments would be before the court. Those included all First Amendment issues, all search and seizure issues, including specific alleged defects in each warrant, all grand jury issues, privilege questions, and all severance matters. Oral argument on the matters briefed was set for September 6, 1989.

On August 16, 1989, counsel for defendants Ferris Alexander, Dolores Alexander, and Jeffrey Alexander moved to withdraw. On September 12, 1989, substitutions of counsel were filed by Robert Smith, Esq. and David Forro, Esq., for Ferris Alexander, and Michael McGlennen, Esq. for Dolores Alexander. Counsel for Jeffrey Alexander withdrew his motion to withdraw. A short period was allowed for new counsel to review the briefs submitted on behalf of their clients by prior counsel, and oral argument was set for September 25, 1989. Counsel assumed representation after an admonishment that the pretrial proceedings had been earlier extended on two occasions, and that generous periods had been allowed for consideration, preparation and filing of pretrial motions, and for trial preparation, and that further extensions were deemed unwarranted by the court. All agreed to assume representation under those circumstances.

Counsel for each of the defendants appeared on September 25, 1989 for oral argument, as did each defendant except Jeffrey Alexander. The court required of him a sworn written waiver of appearance, which must be filed. Defendant Tigue appeared *pro se*. Counsel for the government appeared. All parties made oral argument. In addition, defense counsel sought leave to file further memoranda of law and to make new challenges to the 87 search warrants, on the basis that earlier counsel had failed to do so.

In addition, there is pending the motion of the Minnesota Civil Liberties Union for leave to appear as amicus curiae regarding the indictment of and severance issues pertaining to defendant Tigue.

The court has before it the indictment, the 87 search warrants, the grand jury transcripts *in camera*, the transcript of proceedings before Senior United States District Judge Edward Devitt regarding Robert Milavetz *in camera*, the affidavit of defendant Tigue *in camera*, the testimony

of record, and the briefs of the parties. The majority of the motions are susceptible of decision on the law, and on the face of the indictment. To the extent that findings of fact are necessary to the resolution of a motion, those findings are discussed in the relevant subpart of this Report and Recommendation.

## I. FIRST AMENDMENT CHALLENGES

### A. RICO

Defendants seek dismissal of Counts VI, VII and VIII of the indictment, as well as the forfeiture provision of the indictment on several First Amendment grounds. They allege that, as applied to predicate conduct consisting solely of obscenity offenses, RICO is unconstitutionally overbroad because it both chills presumptively protected First Amendment activity, and operates as a prior restraint on such activity. Defendants also expressly challenge the pretrial restraining order and postconviction forfeiture provisions of RICO as a prior restraint in derogation of the First Amendment.[2]

As in *Fort Wayne Books, Inc.*, many of defendants' constitutional attacks on the indictment, including its RICO counts, more accurately implicate the validity of the federal obscenity laws, than they do RICO. To the extent that is the case, this court firmly recognizes, as discussed in the next subpart of this Report and Recommendation, that obscenity does not fall within the zone of constitutionally protected speech. In fact, it is legitimately subject to the criminal enforcement powers of the government. The focused question here, then, is whether the employment of

obscenity predicates in the content of a RICO prosecution unconstitutionally touches the exercise of separate and legitimate First Amendment activity. There is, in light of *Fort Wayne Books*, no longer a real question whether RICO may legitimately include the unprotected area of obscenity.

When the pretrial restraining order and post-conviction forfeiture provisions of RICO are examined with care, it becomes clear that this is a serious issue, of significant constitutional magnitude. Because such a pretrial restraining order is in place here, and because the forfeiture provisions are invoked in the indictment, it is appropriate to consider the problem both as it exists facially, on the statute, and in its application, to this case. Of course, well established principles of constitutional construction dictate that if a statute may be construed to be enforceable in a manner consistent with the Constitution, that it should not be struck down on its face. *United States v. Thirty–Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); *Irving v. Clark*, 758 F.2d 1260, 1263 (8th Cir.1985), *aff'd*, 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987); and *Turchick v. United States*, 561 F.2d 719, 723 (8th Cir.1977). The court is mindful that in reviewing a statute's facial validity, pre-existing constitutional requirements should be impliedly read into the words of the statute, when it is reasonably possible to do so. *Cf. New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Time Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). Even with these precepts in the forefront, it is the conclusion of this court that the RICO pre-

---

**2.** Defendants have not filed any motion challenging the RICO statute, as applied to predicate conduct consisting solely of obscenity offenses, on the grounds of unconstitutional vagueness. In addressing that contention, in the context of a state RICO statute, the Supreme Court, in *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), cast it as "nothing less than an invitation to overturn *Miller [v. California]*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) ]—an invitation that we reject." *Id.* 109 S.Ct. at 924. In so doing, the Court observed that the Indiana RICO statute

closely tracked the federal statute, and that the holding may determine the constitutionality of use of obscenity as a predicate offense in federal RICO prosecutions. The Court reasoned that because the Indiana RICO law wholly incorporated a constitutional obscenity statute, that the vagueness challenge was without merit.

Aside from the potential vagueness challenge to the application of RICO to predicate offenses of obscenity, there has not been here, any challenge to the RICO statute itself or grounds of vagueness.

trial restraining order and post-conviction forfeiture provisions, when employed with predicate offenses of obscenity, are both facially unconstitutional, as well as unconstitutional in their application in this case. They are overbroad, and also constitute prior restraints of legitimate First Amendment activity.

This analysis must begin with a reaffirmation of the unflagging protection afforded by our Constitution to the robust exchange of ideas in our polity, and its avowed contribution to our national strength and diversity. *New York Times v. Sullivan,* 376 U.S. 254, 269–270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964); *Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 215–216, 13 L.Ed.2d 125 (1964). The underpinnings of these First Amendment values are so potent as to result in a legal presumption that the exchange of ideas is constitutionally protected. This presumptive zone of First Amendment activity is well-established in our jurisprudence, and recently confirmed. *Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957); *Thornhill v. Alabama,* 310 U.S. 88, 101–02, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1940); *Whitney v. California,* 274 U.S. 357, 375, 47 S.Ct. 641, 648, 71 L.Ed. 1095 (1927) (Brandeis, J. joined by Holmes, J. concurring); *Abrams v. United States,* 250 U.S. 616, 630, 40 S.Ct. 17, 22, 63 L.Ed. 1173 (1919) (Holmes, J. dissenting); and *Fort Wayne Books, Inc.,* 109 S.Ct. at 929.

### . 1. *Overbreadth*

Although a statute may legitimately exist to regulate and punish unprotected expressive activity, *e.g. New York Times,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; (libel), *Gertz v. Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); and *Drotzmanns, Inc. v. McGraw–Hill, Inc.,* 500 F.2d 830 (8th Cir.1974); ("fighting words"), *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), and *Harisiades v. Shaughnessy,* 342 U.S. 580, 591–92, 72 S.Ct. 512, 520, 96 L.Ed. 586 (1952) (advocat-

ing violent overthrow of the government); *Hammond v. Adkisson,* 536 F.2d 237, 239 (8th Cir.1976); (obscenity), *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); and *United States v. Freeman,* 808 F.2d 1290 (8th Cir.), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987), it may not, at the same time, reach out to touch or encompass these presumptively protected First Amendment activities. If it does, it is unconstitutionally overbroad. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); and *Upper Midwest Booksellers v. City of Minneapolis,* 780 F.2d 1389, 1391–92 (8th Cir. 1985).

Defendants argue that the restraining order provisions and post-conviction forfeiture provisions of RICO do just that, when employed in an obscenity context. The Supreme Court did not address the constitutionality of the RICO forfeiture provisions in this context in *Fort Wayne Books, Inc.* because none of the cases then before it involved such a forfeiture. *Id.* 109 S.Ct. at 928 n. 11. Although it struck down, as a prior restraint, a pretrial seizure of three bookstores and their contents, the Court did not address the use of a restraining order, such as the one entered in this matter. In *Alexander v. Thornburgh,* the court did not reach the constitutionality of the forfeiture provisions under the prior restraint doctrine. 713 F.Supp. at 1294. It did uphold the facial validity of those provisions, however, against an overbreadth challenge. *Id.* at 1289.

The forfeiture provisions in issue here are set forth at 18 U.S.C. § 1963(a), (b), (c). Upon conviction, the sentencing court is mandated to order the statutory forfeiture, which is not limited to those assets tainted by the racketeering activity. Instead, the forfeiture applies to the defendant's entire interest in

— any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of Section 1962; and (18 U.S.C. § 1963(a)(2))

— any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity ... in violation of Section 1962. (18 U.S.C. § 1963(a)(3)).

The parties here, and the courts reviewing these forfeiture provisions, have commonly understood them to include business and property of the convicted person, even if a portion of that business or property entails or is attributable to legitimate business operations. *Eg. United States v. Busher*, 817 F.2d 1409 (9th Cir.1987); and *Alexander v. Thornburgh*, 713 F.Supp. at 1289. The legislative history squares with this view, and evinces a congressional intent to attack racketeering at its economic roots through the mandatory forfeiture clause. A line of cases, including *Alexander*, and *United States v. Pryba*, 674 F.Supp. 1504 (E.D.Va.1987), concludes that a penalty provision, such as a fine or forfeiture, is not constitutionally constricted by the amount received by a defendant in connection with the specific activity for which he was convicted. A fine, for instance, may extend in the court's discretion, to an amount commensurate both to his ability to pay and to serve some deterrent value. In upholding the forfeiture provision on this rationale, the court in *Thornburgh* noted that "if plaintiff's argument were accepted, it would seemingly invalidate any penalty provision ... in an amount that is not tied to the profits earned from the sale of obscene materials...." 713 F.Supp. at 1289. *Polykoff v. Collins*, 816 F.2d 1326 (9th Cir.1987), and *511 Detroit Street, Inc. v. Kelley*, 807 F.2d 1293 (6th Cir.1986), *cert. denied*, 482 U.S. 928, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987), follow the same rationale in upholding fines imposed against booksellers for obscenity violations.

The imposition of a fine is a fundamentally distinct punishment from the forfeiture of an entire business or enterprise, as is contemplated by § 1963. When the businesses, enterprises, or properties contemplated within § 1963 are engaged in a mixture of lawful distribution of expressive materials and obscenity, the statute quite clearly contemplates wholesale forfeiture, including the lawful portion. The all-encompassing statutory language seems emphatic in this regard. If the asset is "derived from ... directly or indirectly", the proceeds of racketeering, it is forfeitable under § 1963(a)(3). *Western Business Systems, Inc. v. Slaton*, 492 F.Supp. 513 (N.D. Ga.1980) (forfeiture applies to any chattel including books or movies which are seized not because of their contents but because they were realized through or derived from crime). On its face, the statute could encompass the forfeiture of major national bookstore chains in the event that a jury in one judicial district found it to be engaged in the multiple sales of, for example, a given obscene magazine in a single locale, in violation of the racketeering laws. Likewise, under § 1963(a)(2), if a convicted racketeer "participated in" any enterprise in violation of § 1962, the entire interest held by him in that enterprise is forfeitable, even if it, in some proportion, involves mainstream, lawful dissemination of expressive materials. In *Fort Wayne Books, Inc.*, 109 S.Ct. at 928, the Court, in *dicta*, stated that for purposes of deciding that case, but without deciding the issue, it assumed that bookstores and their contents are forfeitable when it is proved they are "used in or derived from" obscenity racketeering activity. The Supreme Court clearly did not decide the issue, and articulated an assumption far more narrow than the forfeiture language of § 1963. Because the forfeiture provisions of § 1963 contemplate, wholesale forfeiture without regard to consequences to the exercise of protected expressive acts, it must be concluded that in the context of RICO/obscenity prosecution, the forfeiture provisions of § 1963 are impermissibly overbroad on their face, and may not be employed. Likewise, as measured against a reading of the indictment in this case, which sets forth a claim for forfeiture including multiple bookstores, theatres, and videotape rental establishments, the forfeiture provisions, as applied, are unconstitutionally overbroad.

The overbreadth of the forfeiture provisions, however, should not result in a dismissal of the RICO counts of the indict-

ment. Because they amount to only one of several available criminal penalties should there be a conviction, the prosecution under the RICO counts can properly go forward without the availability of the forfeiture remedy. *United States v. Marubeni America Corp.*, 611 F.2d 763, 769–70 (9th Cir.1980) (court dismissed forfeiture derived from single count which alleged violation of 18 U.S.C. § 1962(c) and noted that such was not only effective penalty against corporate racketeers).

It is, therefore, recommended that defendants' motion to find the forfeiture provisions of 18 U.S.C. § 1963, when employed in a case involving predicate offenses of obscenity, to be unconstitutionally overbroad both on their face and as applied, be granted. It is, however, recommended that the motion to dismiss Counts VI, VII and VIII of the indictment on this basis be denied.

The provision permitting the entry of a pretrial restraining order, 18 U.S.C. § 1963(d)(1), suffers from overbreadth for the same reasons set forth above. The only purpose of the restraining order provision is to enable the post-conviction forfeiture. The statute makes clear that such an order is issuable "to preserve the availability of property ... for forfeiture under this section." The Supreme Court in strong language struck down the pretrial seizure of the three bookstores in *Fort Wayne Books, Inc.*, finding it to constitute a prior restraint. It is clear that any system of prior restraint carries a strong presumption of unconstitutionality. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). The "risk of prior restraint" existing with the statutory vehicle for such pretrial seizures, was sufficient to strike down the order in *Fort Wayne Books, Inc.*, 109 S.Ct. at 927–28.

The facts there, however, involved the wholesale seizure of three bookstores and their contents resulting in the interruption of sales of presumptively protected books and films. *Id.* at 929. The precedent cited by the Court involved holdings which turned on the actual removal of expressive materials from circulation. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986); and *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

The restraining order here is wholly unlike the pretrial seizure order in *Fort Wayne Books, Inc.* It expressly authorizes the continuation of all business activity by each of the entities identified in the forfeiture pleadings. It has been amended to allow the sale of one of those entities as authorized by a local court. It essentially limits defendants only in terms of the transfer of title to any of the entities. It was issued *ex parte*, and under seal, along with the filing of the indictment, on May 30, 1989. It was issued much in the manner of a search warrant, upon an affidavit showing of probable cause by the case agent. Encompassing 32 pages, the order applies to each of the defendants, to some 48 "controlled entities," and the accounts of the defendants and entities at 14 specified financial institutions. It also orders counsel for defendants and "other persons acting for or in concert with" the defendants or entities to comply with its terms. The overall prohibition of the restraining order is against alienation, transfer, sale or dissipation of the capital assets. It imposes recordkeeping requirements, specifying documentation necessary for transactions included within the ordinary course of business. The order defines the ordinary course of business to include, among other things, payment for inventory and supplies, ordinary use of equipment and supplies, and other things. The order also provides for government monitoring of the operations of the "controlled entities", to guard against dissipation and waste. The monitoring requires the review of books and records, and is to be compensated for by defendants. The order provides defendants with the alternative of a performance bond, in an amount to be set, if they elect that option. The order is entered at docket # 6.

This quite clearly constitutes a substantial governmental intrusion into ongoing businesses which are apparently engaged

in distribution of expressive materials. Without any prior adversarial hearing, or any adjudication that this activity is wholly within the unprotected zone of obscenity, this restraining order suffers from the same overbreadth problem as does the forfeiture clause. *Quantity of Copies of Books v. State of Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and *Heller,* 413 U.S. at 492, 93 S.Ct. at 2794. In fact, from the time of the indictment until the time of trial, this restraining order has and will have more direct effect on that part of the businesses engaged in presumptively protected distribution than will the forfeiture pleadings.

For these reasons, the availability of a pretrial restraining order under § 1963(d) is facially unconstitutionally overbroad in a RICO prosecution predicated upon underlying obscenity offenses. In this case, the existing restraining order is likewise impermissibly overbroad. It is therefore recommended that the motion to find them so be granted, and that the restraining order be vacated, with a return to defendants of all sums thus far expended in honoring the terms of that order. *Cf. Thornburgh,* 713 F.Supp. at 1293, where the court suggests that a performance bond requirement could serve as a constitutional means of preserving forfeitable assets in the case of a bookseller charged in a RICO/obscenity case.

### 2. *Prior Restraint*

These same two provisions are alleged to violate the First Amendment as an unconstitutional prior restraint. The prior restraint doctrine has, as its chief function, the guaranty of prevention of previous restraints on publication or dissemination of expressive matters. *Near v. Minnesota,* 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931). In *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976), the Court stated that prior restraints are the most serious and intolerable of infringements on First Amendment rights. They come to the Court with a heavy presumption weighing against them. *Bantam Books, Inc. v.*

*Sullivan,* 372 U.S. at 70, 83 S.Ct. at 639. In *Near's* early pronouncement of the doctrine, the Supreme Court drew a clear line between unlawful prior censorship, and post-publication punishment imposed following legal process. The former is in violation of the First Amendment, and the latter is not. 283 U.S. at 714, 51 S.Ct. at 630.

The government here argues that the forfeiture provision falls into the latter category, and is employed only after the substantial judicial safeguards inherent in a criminal prosecution have been satisfied. It argues, based on *Fort Wayne Books, Inc.,* that some degree of resultant self-censorship, is not enough to invalidate a penalty provision imposed by past obscenity related conduct. In passing on the propriety of using obscenity offenses as predicate acts under RICO, the Court acknowledged that the stiff RICO penalties might act as a deterrent "and cause some cautious booksellers to practice self-censorship and remove First Amendment protected materials from their shelves." *Fort Wayne Books, Inc.,* 109 S.Ct. at 925. The Court observes it to be a practical reality that criminal obscenity statutes will inhibit the dissemination of some materials which are not obscene. The RICO forfeiture provision, however, involves more than the mere threat of self-censorship because it authorizes the seizure and removal from the stream of commerce businesses actually involved in protected expressive acts that have not been a subject of a prior criminal conviction. The Court expressly stated in a footnote, that it was not, in *Fort Wayne Books, Inc.,* passing upon the issue of RICO forfeiture provisions as a prior restraint. *Id.* at 928 n. 11. In leading to this footnote, the Court quoted the Indiana Court as stating that the Indiana RICO forfeiture provision "is intended not to restrain the future distribution of presumptively protected speech but rather to disgorge assets acquired through racketeering activity." *Id.* at 928.

If that were truly the substance and the effect (*Near,* 283 U.S. at 708–09, 51 S.Ct. at 628) of § 1963(a)(2) and (3), it would be simple to conclude that RICO's forfeiture

provisions do not constitute a prior restraint. However, as discussed above, the forfeiture statutes are broadly drawn and designed to result in forfeiture of the entire property interests of the convicted racketeer, even if that interest may in large part be derived from lawful sources. In the case of bookstores, theaters, and movie distribution enterprises, it may well be the case that the forfeiture involves substantial inventories of actual protected expressive materials, as well as those presumptively protected until adjudicated otherwise. The forfeiture statute is drawn without any proportionality of this mix in mind, and was in fact enacted prior to the addition in 1984, by Congress, of obscenity as an additional predicate offense. There is no statutory provision confining the forfeiture penalty solely to the disgorgement of assets acquired through racketeering activity, as the Indiana Court discussed. To the extent that businesses engaged primarily in the legitimate distribution of expressive nonobscene materials are forfeitable, as a penalty for obscenity racketeering, it is difficult to see how such a forfeiture does not constitute a prior restraint. *J.R. Distributors, Inc. v. Eikenberry*, 725 F.2d 482 (9th Cir.1984), *rev'd on other grounds, sub nom Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

A penalty provision implicating the ongoing business of presumptively protected activities must be more narrowly drawn in order to avoid that consequence. *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 n. 19, 104 S.Ct. 2118, 2126 n. 19, 80 L.Ed.2d 772 (1984) ("[w]here the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify an overbreadth attack"). *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980); *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 637, 46 L.Ed.2d 659 (1976); *N.A.A.C.P. v. Button*, 371 U.S. 415, 433, 439, 83 S.Ct. 328, 338, 340, 9 L.Ed.2d 405 (1963); *Cantwell v. Connecticut*, 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940).

In numerous instances, federal courts have struck down overly broad penalties for obscenity convictions as an impermissible prior restraint. *Eg. City of Paducah v. Investment Entertainment, Inc.*, 791 F.2d 463 (6th Cir.), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 290 (1986); *Gayety Theatres, Inc. v. City of Miami*, 719 F.2d 1550 (11th Cir.1983); *Entertainment Concepts Inc., III v. Maciejewski*, 631 F.2d 497 (7th Cir.1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981); *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir.1980); *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159 (5th Cir.1978); *aff'd on other grounds*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); and *Cornflower Entertainment, Inc. v. Salt Lake City Corp.*, 485 F.Supp. 777 (D. Utah 1980). The language of the *Cornflower* court is typical of the holdings of these cases, that the penalties were not in fact imposed for past abuses, and instead amounted to prior restraints: "To reason that an involuntary closure of a motion picture theater for past obscenity violations does not constitute a prior restraint is clearly contrary to the Supreme Court's definition of prior restraint." 485 F.Supp. at 786. Likewise, the forfeiture contemplated here, of entire businesses engaged in the distribution of books, magazines, and movies, is an overly broad penalty even for obscenity racketeering, and therefore constitutes a prior restraint of those entities.

It is, therefore, recommended that RICO's forfeiture provisions, when employed in a prosecution having predicate obscenity offenses be held facially unconstitutional as prior restraints. It is recommended, however, that the motion to dismiss the RICO counts on that basis be denied.

Likewise, the pretrial restraining order provision of RICO, in the context of a RICO/obscenity prosecution, is unconstitutional on its face as a prior restraint. *Fort Wayne Books, Inc.* has expressly so held in the instance of a pretrial seizure of three bookstores in a RICO/obscenity prosecu-

tion. 109 S.Ct. at 927. In observing that thousands of books and films were taken out of circulation by the pretrial seizure, the Court stated that without an adversarial hearing in which the presumption of First Amendment protection was overcome, the prior-restraint doctrine was violated.

The issuance of a restraining order, even if it allows the business to carry on in its usual course, is not sufficiently constitutionally distinct to escape this holding. Such a restraining order, as is evident from the one in place here, puts entire businesses into the class of "controlled entities," enjoins dissipation of their assets, imposes recordkeeping requirements, and most significantly, requires the oversight of the businesses by the same entities involved in the pending prosecution of the matter. It is self evident that these restrictions constitute such a significant degree of government involvement in the operations of protected First Amendment activities as to be the equivalent of unconstitutional censorship. "The way in which a restraint on speech is 'characterized' ... is of little consequence" for purposes of prior restraint analysis. *Near,* 283 U.S. at 720–21, 51 S.Ct. at 632–633, cited in *Fort Wayne Books, Inc.,* 109 S.Ct. at 929.

The ongoing court-ordered intrusion of the government is sure to chill the involvement of suppliers, customers, employees and other third persons doing day-to-day business with these "controlled entities", whose every transaction is subject to the eye of an agent also involved in the racketeering prosecution of those entities.

For these reasons, the restraining order provisions of the RICO statute, when applied in a case involving obscenity predicates, and as embodied in docket # 6 herein, amount to unconstitutional prior restraints. They should be vacated here, but the RICO counts should nonetheless survive, for the reasons discussed above.

### 3. *Ex–Post Facto Prohibition*

The Ex–Post Facto doctrine prohibits the criminalization of an act performed prior to the passage of the relevant criminal pro-

scription. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). Defendants argue that because the RICO counts of the indictment allege a racketeering enterprise from 1969 on, and because obscenity was added only in 1984 as a permissible predicate offense, that this prosecution impermissibly criminalizes conduct occurring before 1984. They argue that because the First Amendment presumptively protected all expressive activity for RICO purposes prior to 1984, that the charge of an obscenity racketeering enterprise prior to that date cannot be sustained.

The argument is not persuasive. As the government urges, Congress gave fair warning on the face of the RICO statute that those who had committed a predicate act prior to its enactment, could be properly prosecutable under its provisions upon the commission of an additional single predicate act. This argument has been repeatedly sustained against attacks under the Ex Post Facto prohibition. *United States v. Brown,* 555 F.2d 407 (5th Cir. 1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978); *United States v. Campanale,* 518 F.2d 352 (9th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); and *United States v. Pryba,* 674 F.Supp. 1504 (E.D.Va.1987).

Because constitutional federal state and obscenity statutes existed prior to the 1984 legislation which added obscenity as a predicate act, the foregoing precedent sustains the government claim that a portion of the predicate conduct or proof of racketeering may nonetheless predate the 1984 legislation.

The motion to dismiss the RICO counts as violative of the Ex Post Facto clause should be denied.

### B. OBSCENITY COUNTS

#### 1. *Constitutionality of Obscenity Standard*

Counts 6 through 42 of the indictment charge defendants Ferris J. Alexander, Sr., Dolores Alexander, Jeffrey Alexander and Wanda Magnuson with substantive violations of the federal obscenity laws. 18 U.S.C. §§ 1465 and 1466. Defendants seek

dismissal of those counts, inviting the trial court to reexamine the constitutional validity of the Supreme Court's obscenity standard in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). They complain that the standard is overbroad, exceeding the legitimate governmental interest of protecting minors, unwilling adults, and neighborhoods; is so constitutionally vague that it inhibits free speech and violates due process; is lacking in a meaningful scienter element; and in combination with the enhanced RICO penalties, improperly chills free speech.

The *Miller* standard has been repeatedly addressed, and upheld, by the Supreme Court. *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977); and *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). The Court just this year refused any invitation to reexamine the *Miller* standard in *Fort Wayne Books, Inc.* Accordingly, all lower courts, including this one, are bound by it. The law of the land quite plainly is that obscene expression, as defined by the three-part *Miller* test, falls outside First Amendment protection, and is punishable under the criminal law.

No more need be said.

### 2. *Viability of § 1466*

This statutory provision, enacted in November, 1988, makes it a federal offense to engage in the business of selling or transferring obscene matter. Paragraph (b) of the statute contains a rebuttable presumption that

> the offering for sale of or to transfer, at one time, two or more copies of any obscene publication, or two or more of any obscene article, or a combined total of five or more such publications and articles

amounts to engaging in the business, as proscribed under paragraph (a). The penalty for this offense is enhanced from the penalty for conviction under § 1465.

Counts 32 through 42 charge defendants, with the exception of defendant Tigue, under § 1466. They challenge the constitu-tionality of the statute both on vagueness grounds, and on the grounds that the presumption violates due process of law within the meaning of *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) as well as the burden of proof requirement, as proscribed by *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

The alleged vagueness of the obscenity standard is disposed of in the preceding section, and the alleged vagueness of the terms "engaged in the business" and "receiving" does not rise to the level required for a statute to be constitutionally infirm on that basis. The plain language of the statute, coupled with the scienter element of the offense is sufficient to put a reasonable person on notice of what the statute proscribes.

The presumption, which is rebuttable, as set forth, clearly meets the due process test that "the presumed fact must be more likely than not to flow from the proven fact on which it is made to depend." *Leary*, 395 U.S. at 36, 89 S.Ct. at 1548. The presumption, in fact is derived from and almost identical to that in § 1465, and upheld after challenge in *United States v. Manarite*, 448 F.2d 583 (2nd Cir.), *cert. denied*, 404 U.S. 947, 92 S.Ct. 281, 285, 287, 298, 30 L.Ed.2d 264 (1971).

Accordingly, defendants' motions for dismissal of the counts based on 18 U.S.C. § 1466 should be denied.

### 3. *Equitable Estoppel*

Defendants argue that this prosecution is a "sudden, unexpected, and unwarranted reactivation of prosecution" of obscenity matters by the federal authorities, which must be foreclosed on the grounds of equitable estoppel. They claim that because defendant Ferris Alexander has not been prosecuted by the federal authorities for 17 years, that he has come to rely in his business dealings on some sort of governmental acquiesence in the non-obscene nature of his business dealings. He argues, in part, that he has construed this non-prosecution as a conformity of his books and movies with the "contemporary community

standards" of the *Miller* test. They contend, secondly, and as part of this theory, that they were constitutionally entitled to some fair warning on the part of the government, that it regarded these materials as obscene, before prosecution could properly go forward. Thirdly, as part of this theory, they argue that these defendants have been improperly segregated out for prosecution on federal obscenity grounds, and that this selectivity in their prosecution is fatal.

Each of these arguments is rejected, and the court concludes that whether characterized as "equitable estoppel" or an aspect of "due process", the government cannot properly be foreclosed from proceeding for these reasons.

Defendants' reliance on the equitable estoppel theory derives from *Watkins v. United States Army*, 875 F.2d 699 (9th Cir.1989) (*en banc*). The case involved a claim for injunctive relief against the Army regarding qualifications for enlistment. No case has been cited to the court involving an equitable estoppel in a criminal prosecution. In fact, authority exists for the proposition that it is inapplicable in a criminal matter. *United States v. Anderson*, 637 F.Supp. 1106 (D.Conn.1986). There has been no showing of any affirmative representation by any government official having authority to do so, indicating that defendant's conduct was non-prosecutable, or that the government would not prosecute it. *Cf., United States v. Bruscantini*, 761 F.2d 640 (11th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 271, 88 L.Ed.2d 233 (1985).

The government's recitation of the published opinions regarding obscenity in the federal reporters during recent years is probative that federal prosecutions have indeed occurred. Moreover, the enactment of RICO, and the 1984 amendment adding obscenity as a predicate offense, were clear indicators, long before 1989, that Congress regarded trafficking in obscenity as a serious criminal offense. There is no requirement, other than the clarity of the language in the statute involved, that a defendant be forewarned of the possibility of prosecution before a charge may be brought. As the Court stated in *Fort Wayne Books, Inc.*, the Supreme Court has never required the prosecution to "fire warning shots." 109 S.Ct. at 926.

Defendants have not met their threshold heavy burden in pursuing the claim of selective prosecution. *United States v. Catlett*, 584 F.2d 864 (8th Cir.1978). Without doing so, they are not entitled to further hearing to inquire into the motives behind the prosecution. Based upon the indictment's contents and the other information before the court in this matter, it appears that the prosecution is well within the bounds of fair prosecutorial discretion. *Cf. United States v. Hazel*, 696 F.2d 473 (6th Cir.1983); *United States v. Rice*, 659 F.2d 524 (5th Cir.1981); and *Catlett*, 584 F.2d 864.

Consequently, the motion to dismiss on grounds of equitable estoppel should be denied.

### 4. *Temporal Remoteness*

Defendants also challenge the obscenity related counts, seeking their dismissal, on the argument that the dates of the charged offenses are too remote to be fairly judged by jurors according to the constitutional *Miller* test of "contemporary community standards." They claim also that young jurors are generally more favorable to them, and that those who were young at the time of the alleged offenses are not now so young, and as a corollary, that jurors who are now 18 are not competent to sit in judgment of contemporary community standards as they existed in 1984–1988. They also assert that they are deprived of obtaining viable surveys regarding community reaction to specific books or movies, because community standards may now differ from what they were at the time of the offenses.

These clearly are not the type of reasons warranting the remedy of dismissal. A defendant in a criminal case is entitled to a fair jury, selected from a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). He is not entitled, as such, to have

any given class, race, or gender seated on his jury. The serious question of selective, discriminatory removal of certain groups of jurors, is not presented in this case. *Cf. Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The acknowledged fluidity of contemporary community standards in the case law—*see McKinney v. Alabama*, 424 U.S. 669, 96 S.Ct. 1189, 47 L.Ed.2d 387 (1976), does not require the prosecution of an obscenity case to occur in the same year as the offense date.

There is no merit to defendant's analogy of the preindictment delay cases where dismissal may flow from inordinate preindictment delay, utilized by the prosecution for its tactical advantage, and to the prejudice of the defendant. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Moreover, the requisite elements required for dismissal on those grounds have not been demonstrated here.

The charges should not be dismissed for temporal remoteness.

### 5. *Affirmative Defense*

Defendant Ferris Alexander seeks a pretrial order granting him the right to prevent an affirmative defense that he was in good-faith mistaken whether the materials upon which the obscenity-related charges are based fell within the *Miller* three-part test. The predicate for the motion is the composite of defendants' arguments challenging the *Miller* test. Especially, as respects this motion, defendant carries on his claim that *Miller* and its progeny fail to include a constitutionally adequate scienter, or *mens rea*, requirement. As articulated by the Supreme Court in *Hamling v. United States*, 418 U.S. 87, at 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1974), the government must prove that a defendant charged with obscenity "knew the contents, nature, and character of the materials." The Court has expressly held that the government need not prove defendant knew the materials to be obscene.

To permit defendant to go forward with his affirmative defense, as proposed, would have the effect of nullifying the Supreme Court's *mens rea* standard in obscenity matters.

Accordingly, the motion should be denied.

## II. THE CONSPIRACY COUNT

Count I of the indictment is the only count in which each of the defendants is charged along with all the others. It is the only count in which defendant Tigue is charged. It alleges that from 1969 until the return of the indictment, the defendants conspired to defraud the United States, in violation of 18 U.S.C. § 371, "by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service" by concealing the amounts and deposits of income, the true ownership, control, management and operation of, and sources of funds used to acquire and expand Alexander's businesses. The charge is a so-called *Klein* conspiracy, in which the alleged objective is to defraud the United States by obstructing the IRS in its duties of identifying and collecting taxable income. *United States v. Klein*, 247 F.2d 908 (2nd Cir.1957).

Defendants seek the dismissal of this count on a variety of grounds, as well as severance from one another on this count. The arguments include a claim that the count is improperly duplicitous because it in fact charges multiple conspiracies, that it is brought in derogation of the Sixth Amendment right to counsel and attorney-client privileges, that a more specific available statute exists causing the broad-scale conspiracy to be improperly charged, and that a *James* hearing is necessary before the count may proceed to trial. Each of these arguments is without merit insofar as dismissal is sought. With respect to severance, however, the claims regarding attorney-client privilege are meritorious, and will result in the severance of defendant Tigue for trial.

### 1. *Duplicity*

Defendants argue that Count I fails to charge a single conspiracy and that, on its face, it demonstrates the charging of at

least two, and as many as eight, separate conspiracies. If that is indeed the case, the indictment is duplicitous on its face, and carries the potential harm that a defendant will be unable to determine on a verdict form if he has been found guilty of all those conspiracies, or some combination of a few, or only one. The pleading of former jeopardy to a later like charge then becomes problematic. It is true that these are the evils to be protected against when an indictment is duplicitous. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1954) and *United States v. Snider*, 720 F.2d 985 (8th Cir.1983), *cert. denied*, 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984).

Defendants have proffered facts and schematic charts to explicate their argument that multiple conspiracies are charged. The government, at pages 5–11 of its brief on the subject, makes a proffer of how the charged conspiracy is a single conspiracy. These opposing theories as to the conspiracy count are entirely dependent upon proof at trial of their underlying assertions, and, in short, amount to "trial of the general issue" within the meaning of Fed.R.Crim.P. 12(b). For that reason, they are not, at the pretrial motions stage of the proceeding, an appropriate means of resolving the duplicity question. For this timing reason alone, in order to leave resolution of the factual contentions to a determination by a jury, the motion should be denied at this stage. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986); and *United States v. Williams*, 644 F.2d 950, 952 (2nd Cir.1981).

An examination of Count I, as pleaded, however, fails to reveal a facial defect in terms of duplicity. A single objective is pleaded at the outset, namely a joint effort to defraud the United States by means of conducting Ferris Alexander's businesses in such a manner as to impede and impair the IRS. It does not defeat the pleading of this single conspiratorial objective that multiple discrete groups of participants or projects exist. *United States v. Peyro*, 786 F.2d 826, at 829 (8th Cir.1986); *Snider*, 720 F.2d at 988. The lesser participation of one defendant, or his participation in only one facet of a multi-faceted conspiracy, does not warrant the conclusion that an indictment is defective for the improper allegation of multiple conspiracies in a single count. *United States v. Lee*, 782 F.2d 133, 135 (8th Cir.1986); *United States v. Massa*, 740 F.2d 629, 636 (8th Cir.1984), *cert. denied*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); and *United States v. Warner*, 690 F.2d 545, 549 (6th Cir.1982).

Complex conspiracies, involving multiple parties designated to fulfill multiple subsidiary functions may be properly charged in a single count, even if the allegation involves activities over a protracted period. The linchpin for such a charge to be properly pleaded is the existence of a single common objective. *United States v. Richerson*, 833 F.2d 1147, 1153 (5th Cir.1987). *See also, United States v. Napue*, 834 F.2d 1311 (7th Cir.1987), and *United States v. Standard Drywall Corp.*, 617 F.Supp. 1283, at 1299 (E.D.N.Y.1985).

As is clear from much of the precedent on this question of duplicitously pleaded conspiracies, the question most often is incapable of full resolution until after the jury verdict when the jury has been instructed regarding the singular objective requirement and has decided whether or not it has been sustained. *Eg. United States v. Bledsoe*, 674 F.2d 647 (8th Cir. 1982), and *United States v. Coward*, 630 F.2d 229 (4th Cir.1980).

Because the motion to dismiss on grounds of duplicity should be denied, defendants' argument that the separate multiple conspiracies are barred under the statute of limitations also falls. With a properly pleaded single conspiracy in Count I, the limitations period is measured from the date of the last overt act set forth in the count. *Fiswick v. United States*, 329 U.S. 211, 216, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946); *Buford v. Tremayne*, 747 F.2d 445, 448 (8th Cir.1984); *White v. Bloom*, 621 F.2d 276 (8th Cir.1980), *cert. denied*, 449 U.S. 1089, 101 S.Ct. 882, 66 L.Ed.2d 816

(1981). Because that last overt act is alleged to have occurred on November 3, 1988, and because the indictment was returned within five years of that date, there is no violation of the applicable statute of limitations in Count I. 18 U.S.C. § 3282.

### 2. *Sixth Amendment Right to Counsel and Attorney–Client Privilege*

Defendants' motion to dismiss on these grounds is put to the court in strong terms, including allegations of deliberate prosecutorial misconduct. Fact findings are necessary to examination and disposition of the issue. Based upon the testimony of defendant Tigue, the continuing assertion of attorney-client privilege by defendant Ferris Alexander, the sealed Tigue affidavit, and the grand jury transcripts, the following facts are determined:

> Defendant Tigue is a licensed attorney, admitted to practice in a number of courts, including this federal court and the state courts of Minnesota. He has handled a significant amount of First Amendment and obscenity litigation, and is likely to be regarded by members of the bar as a specialist in those areas. Defendant Tigue has continually represented defendant Ferris Alexander from 1974 until the date of this indictment, with only a short hiatus of nonrepresentation around 1981. He has represented defendant Ferris Alexander in those 15 years on some 50 different matters, including litigation, business negotiations, and real estate transactions. It appears that during such representation he has served as an attorney, rather than as a business advisor, scrivener, partner, or in some other capacity. During those representations, privileged communications presumptively and, in fact, occurred. Defendant Tigue has from time to time, represented each of the other codefendants. During the course of those representations, privileged communication presumptively occurred.
>
> Defendant Tigue has represented defendant Ferris Alexander during the investigative stage of this prosecution, beginning that representation in May 1988, upon execution of the search warrants issued by United States Magistrate Floyd Boline. That representation continued until the return of the indictment, in which they were both named as defendants.
>
> During the course of the representation regarding the defense of this case, privileged communications presumptively and, in fact, occurred. Those communications involved legal advice regarding past conduct which was the subject of the contemplated charges. During the months between May 1988 and May, 1989, legal and factual strategies for the defense of the contemplated charges were discussed and formulated.
>
> At no time before the return of the indictment did defendant Tigue or defendant Ferris Alexander become aware that the former may be charged in this matter.
>
> As of June 17, 1988, when defendant Tigue filed a civil complaint seeking injunctive relief as to this investigation, the individual prosecutors in this case became aware of defendant Tigue's representation of defendant Ferris Alexander relating to this criminal investigation. *Alexander v. Thornburgh,* 713 F.Supp. 1278. By his continual involvement in that matter, including argument on summary judgment motions in November, 1988, and prosecution of an appeal to the Eighth Circuit, they were individually aware of the continuation of that representation well into May, 1989.
>
> A grand jury subpoena was issued to defendant Tigue sometime before November 21, 1988, on which date he appeared and testified before the grand jury. No questions were asked of him as to his potential criminal liability in this matter, and nothing led him to believe he was a subject of the investigation.
>
> Defendant Tigue intends, in his defense of this matter, to invoke his right under Rule 1.6(b)(4) of the Minnesota Rules of Professional Conduct, to disclose privileged communications of defendants.

Defendant Ferris Alexander intends to and has invoked the protection of the attorney-client privilege.

Defendant Ferris Alexander intended to hire defendant Tigue for, and defendant Tigue had in fact performed work as lead counsel on the obscenity aspects of any forthcoming indictment.

Defendants seek dismissal as a result of these circumstances, with defendant Ferris Alexander arguing that the government has deliberately interfered with his Sixth Amendment right to counsel and that it has engaged in deliberate prosecutorial misconduct during this sequence of events. He argues also for the dismissal of charges against his codefendant Tigue, as the only available means of preserving the privileged material between him and his former attorney. He urges that it is through the government's actions, and through the fault of no one else, that an attorney-client relationship was allowed to develop on the defense of this very matter up to and including the date of indictment.

In response, the government argues that rules of grand jury secrecy preclude the disclosure of who may or may not be indicted in a given case, and that no prospective defendant is entitled to a so-called target warning. It claims that its conduct is not to be faulted, and that the communications between defendants Tigue and Ferris Alexander are not privileged due to the crime-fraud exception to the attorney-client privilege. They urge that an examination of the charge in the indictment and the grand jury materials allows such a ruling prior to trial. Even without such a pretrial ruling, the government argues that the communications would constitute inadmissible hearsay, and that as a consequence, these two defendants should remain joined as coconspirators, and that dismissal should be denied.

Absent some showing of actual prejudice, an indictment is not dismissable on the grounds asserted here. *United States v. Morrison*, 449 U.S. 361, 367, 101 S.Ct. 665, 669, 66 L.Ed.2d 564 (1981). The case is quite squarely on point, involving a delib-erate intrusion through a codefendant/informant into the attorney-client relationship of a charged defendant. The Court of Appeals had found a Sixth Amendment violation and held that the indictment should be dismissed with prejudice. The Supreme Court reversed on the remedy, holding that in the absence of a showing that representation at trial was impaired, dismissal was not proper. It cited numerous cases in which counsel had been interfered with, but no dismissal awarded. *Eg. Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); and *O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967). It observed that the remedy for these, and other constitutional infractions under the Fourth and Fifth Amendments, has been suppression of tainted evidence.

In this case, no tainted evidence has been procured by the government, and if it somehow is forthcoming, it can be suppressed by the trial court. Because the constitutional right to the assistance of counsel does not include an absolute right to one's choice of counsel, and because defendant Ferris Alexander is now represented by seemingly experienced, competent counsel in the subject area, there is no showing of the type of prejudice which should call for dismissal.

This leaves the question about the potential disclosure by defendant Tigue of communications as to which defendant Ferris Alexander has asserted a claim of attorney-client privilege. As noted above, defendant Tigue has stated his intent to invoke the rules of ethics which allow his use of privileged materials in order to defend himself. He cannot be deprived of matter deemed material to his defense without intrusion into his constitutional right of self defense. *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The government's contention that such communications would constitute inadmissible hearsay are not well-founded, especially in light of the record here. It establishes that defendant Tigue's use of these privileged communications would go to the question of his intent, or purpose, in committing the acts

charged against him in Count I. He has more than once offered to stipulate to the majority of those allegations, and to go to trial on the intent issue. That being the main dispute then, between the government and defendant Tigue, it appears that defendant Alexander's communications are likely to fall into the state-of-mind exception to the hearsay rule. Rule 803(3) of the Federal Rules of Evidence. Under like circumstances, such statements have been admitted over a hearsay objection. *United States v. Partyka,* 561 F.2d 118 (8th Cir. 1977), *cert. denied,* 434 U.S. 1037, 98 S.Ct. 773, 54 L.Ed.2d 785 (1978); *United States v. Taglione,* 546 F.2d 194 (5th Cir.1977).

This leaves then the application of the crime-fraud exception, and the remaining question of severance. If it is the case that the crime-fraud exception swallows the entirety of the communications in issue here, it would seem that a joint conspiracy trial is in order, as the government urges. The Supreme Court has just recently treated relevant facets of the crime-fraud exception. *United States v. Zolin,* —— U.S. ——, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). There, the Court reiterated the well-accepted delineation of past versus future wrongdoing, and the application of the privilege. "The ... privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection— ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing,* but to *future wrongdoing.*" 109 S.Ct. at 2626, citing 8 Wigmore, § 2298, p. 573 (emphasis original). Defendants persuasively argue, and the fact record amply supports, the position that defendant Tigue's representation of Ferris Alexander during the investigation phase of this criminal matter is unarguably outside the crime-fraud exception, because the investigation and charges deal with past wrongs. *In Re Murphy,* 560 F.2d 326, at 337 (8th Cir.1977). Whatever privileged discussions relating to the charged offense in Count I arose between May, 1988 and the date of the indictment, then, relates to past wrongdoing. As a result, the government cannot demonstrate a *prima facie* showing that the communications were engaged in for the express purpose of the commission of ongoing or future crime. *Pritchard–Keang Nam Corp. v. Jaworski,* 751 F.2d 277 (8th Cir.1984); and *In Re Berkley and Co.,* 629 F.2d 548 (8th Cir. 1980).

With respect to the attorney-client communications predating representation on this matter, the court observes that they would have occurred coterminously with the conduct alleged in Count I to be conspiratorial and criminal. Because there is no fair and clear way to separate out which aspects of the privilege may be overridden at trial by the crime-fraud exception, and because defendant Tigue begins trial, under *Rock v. Arkansas* and the rules of professional conduct, with the right to employ those communications in his defense, it would be inappropriate to require a joint trial of these two defendants. Either or both is so likely to suffer some prejudicial consequence, that the interests of fair trial and long-run judicial economy require a severance of defendant Tigue for trial on Count I of the indictment. If the remaining defendants are first tried on the conspiracy count, there is no possibility that defendant Tigue's attempts to have privileged statements admitted in his defense will impair any of defendant Ferris Alexander's trial rights.

Accordingly, dismissal should not be granted as a remedy for this motion, but severance of defendant Tigue for trial is ordered.[3]

### 3. *Improper Offense Charged*

Defendant Ferris Alexander argues for dismissal of Count I on the grounds that the indictment cannot properly charge a *Klein* conspiracy in view of the availability

---

**3.** The court has, in addressing the issues in this motion, reviewed the brief submitted by the Minnesota Civil Liberties Union as *amicus curiae.* It has found, however, that the issues were more fully developed and related to relevant facts by the briefs of the parties. It has also, over the objection of defendants, considered the grand jury transcripts *in camera* in conjunction with the issue of the crime-fraud exception. *Zolin,* 109 S.Ct. at 2630.

of a conspiracy to violate 26 U.S.C. § 7206(1). That statute prohibits the filing of a false tax return, making it a felony to do so.

This motion is readily disposed of by a reading of Count I and its allegations, and by considering the argument of the government that the conspiracy count charges far more than an unlawful agreement to file false returns. It is in fact alleged as part of the conspiracy that there were periods where no returns were filed, and that complicated transactions and entities were established to avoid defendant Alexander's obligation to file. The conduct alleged is indeed far more pervasive, and sounds in fraud, rather than the more narrow offending conduct necessary to proof of the offense of § 7206(1).

Dismissal on this basis should be denied.

### 4. *James Hearing*

The Fifth Circuit Court of Appeals in *United States v. James*, 590 F.2d 575, *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), established a procedure prerequisite to the offering of coconspirator statements by the government at trial. Defendants seek an order that such a preliminary adjudication of the admissibility of coconspirators statements be made in this case, prior to trial.

This Circuit has squarely rejected this approach. *Llach v. United States*, 739 F.2d 1322 (8th Cir.1984); and *United States v. Bell*, 573 F.2d 1040 (8th Cir.1978). In fact, the subsequent history of *James* itself has recognized the onerous and repetitive nature of any requirement that a conspiracy case be presented in a minitrial to the court before actually being tried to the jury. It has, as a result, been modified to establish an order of proof for trial, instead. *Id.* at 578. Moreover, the Supreme Court, in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), has allowed trial courts to consider the contents of coconspirator statements themselves in making preliminary determinations under Rule 801(d)(2)(E) of the Federal Rules of Evidence.

No such pretrial *"James"* hearing will be granted here.

## III. GRAND JURY MATTERS

Defendants, especially defendant Tigue, urge the court to dismiss the indictment due to a pattern of fatal irregularities in the grand jury proceedings in this matter. The challenges include a claim of prosecutorial misconduct in interfering with the independence and deliberations of the grand jury, as well as claims that the grand jurors were erroneously instructed in the law by virtue of omissions regarding the First Amendment, and the failure of the prosecutors to present exculpatory evidence. The defendants seek disclosure of the grand jury transcripts in order to further develop this basis for dismissal. To the extent that any *in camera* review has been conducted without disclosure of the same materials to defendants, they object.

The government has supplied *in camera* a full transcript of the grand jury proceedings, including witness testimony, dialogue between jurors and prosecutors, and instructions of the law. It has also certified that the transcript is a complete one of all proceedings in this matter. After a review of the *in camera* materials and consideration of the parties' legal arguments, along with the presumption of regularity attached to grand jury proceedings—*United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), and *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)—the court concludes that this group of motions is without merit and should be denied.

The prosecutor may not engage in fundamentally unfair tactics or mislead a jury. *United States v. Lame*, 716 F.2d 515 (8th Cir.1983). To the extent that such misconduct occurs before a grand jury, it may constitute a basis for dismissal of an indictment. Manifestly improper conduct may justify that remedy. *See United States v. Babb*, 807 F.2d 272 (1st Cir.1986). However, before misconduct may serve as the predicate for dismissal, it must be established that the independence of the grand jury, in making its decision to indict, was

thereby tainted. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); and *United States v. Hintzman*, 806 F.2d 840 (8th Cir.1986). Although the primary challenges to the indictment in *Bank of Nova Scotia* arose in the context of violations of grand jury procedure, the indictment was also challenged on the basis of an alleged constitutional violation. 108 S.Ct. at 2376. Thus the test of taint on the independence of the grand jury applies equally to allegations of constitutional infractions. *Eg. United States v. Benjamin*, 852 F.2d 413, 420 (9th Cir.1988) (no prosecutorial misconduct warranting dismissal of indictment where prosecutor's questions consistently elicited Fifth Amendment responses); *United States v. Talbot*, 825 F.2d 991, 998 (6th Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988) (dismissal of indictment for alleged constitutional violation warranted only upon demonstration of prejudice); *see also United States v. Zangger*, 848 F.2d 923, 925 (8th Cir.1988) (no dismissal of indictment warranted for prosecutor failure to instruct jury on obscenity standard). Accordingly, then, only if there is grave doubt that the decision to indict was free from such violations is dismissal in order. *Bank of Nova Scotia*, 108 S.Ct. at 2374. As discussed above, even misconduct of constitutional proportion does not ordinarily call for dismissal, *Morrison*, and suppression of evidence or some other lesser remedy should be ordered.

Defendant Tigue presented testimony that his secretary received an anonymous call from a person representing himself to be a grand juror. The call was received on July 10, 1989, after the filing of the indictment. The caller related that when he had expressed serious question about rendering an indictment against defendant Tigue, that Assistant United States Attorney Paul Murphy had told him to "shut up." In conjunction with the prosecutor's alleged failure to provide proper instruction on the law and to present exculpatory evidence, defendant Tigue urges the court to conclude that there was misconduct preventing an independent decision on his indictment.

Rule 6(e)(1) of the Federal Rules of Criminal Procedure requires that all proceedings before the grand jury, except for deliberation and vote, be stenographically recorded. The *in camera* submissions and certification attending it of completeness, demonstrate that such transcription occurred in this case. Nowhere in the numerous dialogues between the prosecutor and grand jurors is there anything which nearly resembles the conversation attributed to the anonymous caller. There is no credible basis of record upon which to conclude that the caller was in fact a grand juror, or that the alleged conversation ever occurred. The transcripts justify the conclusion that this claim is without foundation, and that therefore there is no further particularized need for disclosure of the grand jury proceedings. *Beatrice Foods Co. v. United States*, 312 F.2d 29 (8th Cir.1963).

With this core allegation found to be unsubstantiated, the totality of alleged misconduct disintegrates into several lesser unrelated, and common attacks on grand jury proceedings. First is the claim, disposed of above in the discussion of the conspiracy count, that neither defendant Tigue nor defendant Ferris Alexander was forewarned of the former's impending indictment, or status as a subject of the investigation. As discussed above, the severance remedy appropriately ameliorates the difficulties generated by that circumstance, and dismissal is not warranted even if a wrong were somehow committed in that regard.[4]

---

4. While the government contends that no putative defendant is legally entitled to a so-called "target warning," *United States v. Washington*, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *United States v. Burke*, 781 F.2d 1234 (7th Cir.1985), it is the court's view that the type of disclosure urged by defendants would have avoided the ensuing complications in this prosecution. That could have been accomplished early in the grand jury proceedings either by a motion to disqualify defendant Tigue as counsel, or by motion for relief from grand jury secrecy pursuant to Fed.R.Crim.P. 6(e)(3)(C). At any rate, resolution of that subissue is not essential to disposition of the motion.

With regard to the adequacy of instructions on the law, as presented to the grand jury, defendants focus largely on omission of the First Amendment doctrines of the right of pseudonymity and anonymity as set forth in *Talley v. California,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) and its progeny. The *in camera* submissions contain transcription of the instructions provided to the grand jury, and upon review, the court observes that they include the essential elements of each offense contained in the indictment, and elaboration as to several matters within those elements. There is, as such, no erroneous or misleading instruction. The omission of instructions as to expected defenses does not fatally infect the grand jury proceeding or the indictment. *Lopez v. Riley,* 865 F.2d 30 (2nd Cir.1989); *United States v. Lincoln,* 630 F.2d 1313 (8th Cir.1980); *United States v. Camp,* 541 F.2d 737 (8th Cir. 1976). Moreover, the *in camera* review and indictment make it clear that the government contends that Count I is supported by probable cause as to the motive or purpose of the conspiracy. If defendant Tigue contends that another contrary purpose defeats the *mens rea* element, that is for him to present at trial, should he so choose. For now, however, the question of the accuracy of the law, as it was presented to the grand jurors, centers on probable cause for indictment. *Costello,* 350 U.S. 359, 76 S.Ct. at 406. It is clear that the facts presented to the grand jurors and the instructions of law properly focused their attentions in that regard.

Last is the question of presentation of evidence which defendants contend is exculpatory, and their claim that omission of this evidence fatally misled the grand jury. Well-established precedent makes it clear that there is no obligation on the part of the prosecutor to present the target's explanation for the conduct in issue. *United States v. Civella,* 666 F.2d 1122 (8th Cir. 1981). *Accord United States v. Ismaili,* 828 F.2d 153 (3rd Cir.1987), *cert. denied,* 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988); *United States v. Wilson,* 798 F.2d 509 (1st Cir.1986); and *United States v.*

*North,* 708 F.Supp. 370 (D.C.1988). In this matter, it is clear on this record that the allegedly exculpatory material is indeed the essence of the defense in the case. Whether it carries the day will be determined as it should, by the empaneled petit jury. It is not so evidently exculpatory that it defeats the probable cause underlying the indictment, or gives rise to any prosecutorial obligation to present it to the grand jury.

Under these circumstances, there is not a demonstrated, particularized need to breach the legal secrecy accorded grand jury matters, as required in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), and *In re Disclosure of Testimony Before the Grand Jury,* 580 F.2d 281 (8th Cir. 1978).

As a consequence, defendants' motions relating to grand jury proceedings should be denied.

## IV. SUPPRESSION MOTIONS

The most substantial suppression question here involves Fourth Amendment issues regarding the multiple search warrants, and the large volumes of evidence seized in their execution. Although those warrants have been available for examination and copying by defense counsel since the time of indictment, and although the court ordered briefing on the particularized defects alleged about the warrants and on standing to challenge the warrants, all that is now before the court is a boilerplate motion to suppress, boilerplate motions to join the motions of codefendants, and the government's argument that the motions should be denied because defendants have, for all intents and purposes, not gone forward despite ample time and the court's warnings. Defendants' counsel represent to the court that in the confusion of substitution of counsel, which occurred during the briefing schedule, these briefs were not prepared. Despite a hesitation to reopen the pretrial motions stage of this matter, suppression of evidence seized by warrant is too fundamental a motion to resolve by the equivalent of default. Accordingly, a

new briefing schedule and hearing date will be established for those issues alone.

The remaining suppression dispute deals with tape recorded conversations obtained by the government, involving various of the defendants. None of the conversations involved custodial interrogation, and each was the result of consensual monitoring by one of the participants in the conversation. Consequently, there is no basis for suppression of the contents of any of those tapes. *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *United States v. Craig*, 573 F.2d 455 (7th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 82, 83, 58 L.Ed.2d 110 (1978); and *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975).

No other confessions or statements were provided by any of the defendants to any law enforcement agent.

In sum then, disposition of the motion to suppress evidence obtained by search and seizure is reserved until further briefing and hearing, the motion to suppress the consensually recorded conversations should be denied, and the remainder of the suppression motions denied as moot on the government's representation that no other confessions or statement to law enforcement officers were made.

## V. SUPPRESSION OF MILAVETZ TESTIMONY

Defendant Ferris Alexander seeks suppression of the testimony at trial of witness Robert Milavetz. The basis for the motion is an assertion of the attorney-client privilege. The issues are much akin to those arising in terms of defendant Tigue's potential testimony regarding his attorney-client relationship with defendant Ferris Alexander. Witness Milavetz preceded defendant Tigue as counsel for Ferris Alexander, and served in that role for a period of years, representing Ferris Alexander much as defendant Tigue, in litigation, business negotiations, and real estate transactions. The government opposes the motion, again asserting the crime-fraud exception to the privilege, and claiming waiver of the privilege.

The court has reviewed *in camera* both the grand jury testimony of witness Milavetz, and the transcript, briefings, and Order of Senior United States District Judge Edward Devitt in connection with those grand jury proceedings. This review has been made over defendant's objection to the court's examination of these underlying materials. Under *United States v. Zolin*, — U.S. —, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), and *Beatrice Foods Co. v. United States*, 312 F.2d 29 (8th Cir.1963), the court deemed the review to be both necessary and proper.

As part of Judge Devitt's order, he determined that defendant Ferris Alexander had waived any claim of privilege to the testimony of Milavetz, because he had had fair notice of the proceedings before Judge Devitt, set for March 3, 1989, and failed to appear to assert his privilege. With knowledge that this was an initial step in procuring evidence for a serious criminal prosecution, this failure to appear can be construed in no other meaningful manner other than the waiver which Judge Devitt found. In comparison to potential testimony of defendant Tigue, efforts have been repeatedly made to assert the privilege.[5]

Although Judge Devitt's ruling of waiver and this court's agreement with it is strong medicine as to arguably privileged materials, it is the necessary result. It makes unnecessary any resolution of the arguments regarding the crime-fraud exception. However, this court observes that Judge Devitt did apply the crime-fraud exception to the entirety of the Milavetz testimony in his March, 1989, order and this court sees no reason in the submissions to depart

---

**5.** This is so despite the government's contention of waiver regarding the Tigue affidavit. Defendant had no forewarning of the filing of the affidavit, and adequately prompt measures were taken to enter objection to and provide for sealing of the affidavit. The court declines to find waiver of the privilege regarding defendant Tigue.

from that order. It notes, however, a distinction with respect to defendant Tigue on this question, arising from defendant Tigue's unique role as counsel regarding this very matter from May, 1988 until the return of the indictment. Even if the crime-fraud exception is found to apply in some degree with respect to defendant Tigue's attorney relationship, that finding does not thereby justify an abrogation of the privilege as to all dealings between the two, as attorney and client. *United States v. Valencia*, 541 F.2d 618 (6th Cir.1976).

For these reasons, the motion to suppress the Milavetz testimony should be denied.

## VI. SEVERANCE—OF DEFENDANTS AND COUNTS

The severance motions are numerous in this case, and encompass claims of improper joinder of defendants and counts under the rules of criminal procedure, prejudicial joinder arising from various privilege claims, resultant unavailability of codefendants as witnesses, inconsistent defenses, disparity of evidence admissible against defendants in terms of the relative scope of their involvement, spillover effect, and prejudicial impact of the obscenity related counts on the tax-related counts.

Defendant Tigue's arguments regarding severance need no further discussion because the privilege issues arising from his joint indictment with his client have been found to warrant his severance from the other defendants.

It is most logical to determine if the entire indictment, *sans* defendant Tigue, may and should properly be tried in a single case, before resolving the questions regarding severance of defendants. In resolving the joinder of counts in an indictment, the court should not entertain a mini-trial on the charges, with opposing evidence offered by the parties as to the propriety of joinder. Instead, the allegations on the face of the indictment should be determinative of the joinder of counts. *United States v. Massa*, 740 F.2d 629 (8th Cir.1984), *cert. denied*, 471 U.S. 1115, 105

S.Ct. 2357, 86 L.Ed.2d 258 (1985); and *United States v. Cook*, 99 F.R.D. 252 (E.D. Tenn.1982).

A facial reading of the indictment provides a compelling basis for concluding that the charges arise from a series of acts and transactions "connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). There is, on the face of the indictment, an integration and dependency of the counts. As the government asserts, the fluid identities of business forms and involvement of various persons charged in Count I under the *Klein* conspiracy, is the functional equivalent of the enterprise charged in Counts VI, VII and VIII under the RICO statute. Likewise, the "business" charged in the counts under 18 U.S.C. § 1466 is conterminous with the preceding conspiracy and RICO elements. The substantive wrongful activity alleged to be undertaken by defendants in those various business forms is claimed in the indictment to be directed at the singular purpose of trafficking in illegally obscene materials without detection and financial obligation to the taxing authorities. As a consequence, the substantive tax and obscenity counts are integral to, and constitute partial proof of the other charges. This unity or commonality of the various counts sustains their joinder in a single indictment. *Schaffer v. United States*, 362 U.S. 511, 514, 80 S.Ct. 945, 947, 4 L.Ed.2d 921 (1960); *United States v. Patterson*, 819 F.2d 1495 (9th Cir.1987); *United States v. Bibby*, 752 F.2d 1116 (6th Cir.), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1985); and *United States v. Phillips*, 664 F.2d 971 (5th Cir.), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1981). Likewise, the self-evident commonality of proof on these charges makes their joint trial the preferable alternative. *United States v. Garcia*, 785 F.2d 214, 220 (8th Cir.), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986); and *United States v. Brim*, 630 F.2d 1307 (8th Cir.1980). This is so in spite of any argument that the obscenity-related proof may so offend jurors that they will be unable to separately and independently consider the tax-related charges. Because

the obscenity-related charges are so integral to the conspiracy count and its factual context, this argument for severance is not well taken. *United States v. Garcia*, 785 F.2d at 220 (8th Cir.) (proof relevant to charges against one defendant interwoven with proof relevant to another defendant but no indication that jury was confused).

For these reasons then, the counts of the indictment should be tried together in a single trial. Whether any of the defendants should be separately tried on the group of charges against him or her is the next step in the severance analysis.

The initial question is the propriety of joinder under Fed.R.Crim.P. 8(b). The rule specifies that all defendants need not be charged in all counts, and may be joined in an indictment when they are alleged to have participated in "the same series of acts or transactions." As discussed above, the charged offenses do constitute such a connected series. The alleged involvement on the face of the indictment of each of the defendants (aside from defendant Tigue, who is charged in only one count), sufficiently demonstrates the connection of each in this series of transactions that the joinder of defendants is proper. *Bibby*, 752 F.2d 1116. When viewed in conjunction with the rule that coconspirators should be tried in a single trial, *United States v. Arenal*, 768 F.2d 263 (8th Cir.1985); and *United States v. DeLuna*, 763 F.2d 897 (8th Cir.), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985), it appears that the motions for severance of defendants should be denied.

Before reaching that conclusion, defendants' claims of prejudicial joinder made pursuant to FRCrP 14 must be taken up. The relative complexity of this indictment, and the variance in the roles of each of the defendants does not stand in the way of a joint trial. Here, the number of defendants is relatively small, and their relationship to the charged offenses relatively discrete. The complexity of the charges themselves will continue whether the trials are joint or several. The ability of a jury to compartmentalize defendants and proof is not seriously in question here. *Eg. DeLuna*, 763 F.2d at 919; and *United States v. Miller*, 725 F.2d 462 (8th Cir.1984). Similarly, the comparatively greater weight of the evidence against some defendants, or the greater alleged involvement by some, does not call for severance even if the jury has heard and considered such evidence. *United States v. Robinson*, 774 F.2d 261, 267 (8th Cir.1985); and *United States v. Boyd*, 610 F.2d 521, 525 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). Nor does the admissibility of evidence against some but not others. *Robinson*, 774 F.2d at 267. *United States v. Reeves*, 674 F.2d 739, 746 (8th Cir.1982).

Because there are no post-conspiracy statements involved as proof in this case (see discussion of suppression motions above), the sometimes difficult severance issues arising in terms of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), are not present here.

The remaining issues also do not change the conclusion that a joint trial of all defendants should be had, with the exception of defendant Tigue. Although there are claims that a joint trial may deprive some defendants of the testimony of codefendants, the requisite showing has not been made to sustain a severance on this basis. Prerequisite to such a remedy, a defendant must present actual proof that a given codefendant has committed himself to testify, and that the testimony is exculpatory and material to the defense. *United States v. Garcia*, 785 F.2d 214; and *United States v. Starr*, 584 F.2d 235, 238 (8th Cir.1978).

Likewise, the claims of potentially antagonistic defenses are not adequately of record to call for severance. It has not been demonstrated that for a jury to believe one defense, it will necessarily have to disbelieve another. *United States v. Massa*, 740 F.2d 629; and *United States v. Kaminski*, 692 F.2d 505 (8th Cir.1982). Defendant Dolores Alexander's contention that she knew nothing of the affairs of the businesses set forth in the indictment does no more than portray a defense of igno-

rance. There is nothing demonstrated about the inconsistency of her lack of knowledge with any defense to be asserted by other codefendants.

Last, are the claims by both Ferris and Dolores Alexander that their spousal privilege requires their severance for trial. As elucidated by the Supreme Court in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the privilege has two distinct components: the privilege against testifying over one's objection, against one's spouse; and the separate privilege protecting communications during the course of the marriage. The Supreme Court has clearly held a spouse who chooses to do so, may testify despite the non-waiver of the privileges by the opposing spouse.

The government claims that it has made a sufficient *prima facie* showing of the crime-fraud exception to the spousal privilege for a holding that it has been overcome. It urges therefore that severance on this basis should be denied. A review of the application of the crime-fraud exception to the spousal privilege shows it to have been applied and upheld in the majority of circuits that have been confronted with the question. *United States v. Picciandra*, 788 F.2d 39 (1st Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986); *United States v. Estes*, 793 F.2d 465 (2nd Cir.1986); *United States v. Ammar*, 714 F.2d 238 (3rd Cir.1983); *United States v. Broome*, 732 F.2d 363 (4th Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 116 (1984); *United States v. Mendoza*, 574 F.2d 1373 (5th Cir.), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *United States v. Kahn*, 471 F.2d 191 (7th Cir.1972), *rev'd other grounds*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 and *United States v. Price*, 577 F.2d 1356 (9th Cir.1978), *cert. denied*, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979). This overwhelming weight of authority, and the absence of opposing authority in this circuit call for the application of the exception in this case.

The spouses here are charged jointly in both a *Klein* conspiracy and racketeering enterprise. The *in camera* submissions, consisting of the grand jury testimony, as compared against the face of the indictment, demonstrate a *prima facie* showing of the crime-fraud exception. As with the discussion of this exception and its application to the attorney-client privilege, it should not be the case that there is a wholesale abrogation of the privilege surrounding the entirety of Ferris' and Dolores' marital communications. Only those involved in the perpetration of a crime or fraud should be found to overrule any assertion of privilege. *Valencia*, 541 F.2d at 621. Because the government should not logically be seeking affirmative proof, or impeachment through cross-examination into anything beyond this zone, the severance request should be denied.

Based upon the foregoing, the evidence adduced and submitted *in camera*, the briefs and arguments of counsel, and all the files and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to find the forfeiture provisions of 18 U.S.C. § 1963, when applied to a prosecution based on predicate offenses of obscenity, to be unconstitutional under the First Amendment be GRANTED;

2. Defendants' motion to find the pretrial restraining order provisions of 18 U.S.C. § 1963, when applied to a prosecution based on predicate offenses of obscenity, to be unconstitutional under the First Amendment be GRANTED;

3. Defendants' motion to dismiss Counts VI, VII, and VIII of the indictment on the foregoing grounds be DENIED;

4. The forfeiture provisions of the indictment be dismissed with prejudice;

5. The pretrial restraining order presently in effect be vacated, and any sum expended by defendants for its monitoring be restored to them within thirty days hereof, or upon any order of the trial court sustaining this recommendation;

6. Defendants' motions to otherwise find the RICO statute, when applied to a

prosecution based upon predicate offenses of obscenity, unconstitutional under the First Amendment be DENIED;

7. Defendants' motions to find the RICO statute, as applied to a prosecution based upon predicate offenses of obscenity, to be unconstitutional in violation of the Ex Post Facto Clause be DENIED;

8. Defendants' motions to find the obscenity standard underlying the charged RICO predicate offenses and the offenses charged pursuant to 18 U.S.C. §§ 1465 and 1466, unconstitutional under the First Amendment be DENIED;

9. Defendants' motion to dismiss the indictment on grounds of equitable estoppel be DENIED;

10. Defendants' motion to dismiss the counts alleged under §§ 1465 and 1466 on grounds of temporal remoteness be DENIED;

11. Defendants' motion for leave to present an affirmative defense that he in good-faith mistakenly believed the materials in issue not to be obscene be DENIED;

12. Defendants' motion to dismiss Count I of the indictment on grounds of duplicity be DENIED;

13. Defendants' motion to dismiss Count I of the indictment on grounds of irreparable harm to the Sixth Amendment right to counsel and interference with the attorney-client privilege be DENIED;

14. Defendants' motion to dismiss Count I of the indictment on the grounds that it is properly chargeable only as a conspiracy to violate 26 U.S.C. § 7206(1) be DENIED;

15. Defendants' motion to dismiss the indictment on grounds of prosecutorial misconduct before the grand jury be DENIED;

16. Defendants' motion to suppress evidence obtained by search and seizure be, until such time as the matter is briefed and heard, TAKEN UNDER ADVISEMENT;

17. Defendants' motion to suppress statements, including the product of electronic surveillance, be DENIED; and

18. Defendants' motion to suppress trial testimony of witness Robert Milavetz be DENIED.

DATED: September 30, 1989.

/s/  Janice M. Symchych
Janice M. Symchych
United States Magistrate

## ORDER

Based upon the foregoing, the evidence adduced and submitted *in camera*, the briefs and arguments of counsel, and all the files and proceedings herein,

IT IS HEREBY ORDERED that:

1. Defendants' briefs regarding the motion to suppress evidence obtained by search and seizure shall be submitted to United States Magistrate Patrick McNulty, and served on the United States, no later than October 20, 1989, with no further leave for extension;

2. The government's responsive brief regarding the motion to suppress evidence obtained by search and seizure shall be submitted and served no later than October 27, 1989;

3. Hearing on the motion to suppress evidence obtained by search and seizure, including all testimony and argument, is set for 10:00 a.m., November 14, 1989, before United States Magistrate Patrick McNulty in Room 530 United States Courthouse at 110 South Fourth Street in Minneapolis, Minnesota. All counsel and parties shall be present;

4. Defendant Tigue's motion for severance and separate trial from the remaining defendants is GRANTED;

5. Trial of the remaining defendants shall proceed prior to trial of defendant Tigue, to ensure that the trial of defendant Ferris Alexander, Sr. has concluded prior to any proposed use by defendant Tigue of materials deriving from their attorney-client relationship;

6. Defendants' motion to sever the tax-related counts of the indictment from the RICO and obscenity-related counts is DENIED;

7. Defendants' motions for severance from one another for trial, with the exception of defendant Tigue, are DENIED;

8. Defendants' motion for a *James* hearing regarding Count I of the indictment is DENIED;

9. Defendants' motion for disclosure of grand jury materials is DENIED;

10. Defendants' motion for disclosure of confidential informers is DENIED;

11. Defendants' motion for a list of government witnesses is DENIED;

12. Defendants' motion for pretrial disclosure of Jencks Act materials, to the extent that the government shall produce said materials 10 calendar days prior to trial, is GRANTED;

13. Defendants' motion to require government agents to retain rough notes is GRANTED;

14. Defendants' motions for discovery of Rule 16 and exculpatory materials, to the extent they cover information within the scope of FRCrP 16 and *Brady v. Maryland* and its progeny, are GRANTED;

15. Defendants' motion for disclosure of government agreements with witnesses are GRANTED;

16. Defendants' motion for notice of intent to utilize 404(b) evidence is DENIED;

17. Defendants' motion for a bill of particulars is DENIED;

18. Defendants' motions relating to jury selection, including the number of peremptory challenges, the degree of information to be disclosed regarding prospective jurors, and the method of voir dire, are RESERVED FOR THE TRIAL COURT.

DATED: September 30, 1989.

/s/ Janice M. Symchych

Janice M. Symchych
United States Magistrate